## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMAA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **NUTRIEN AG SOLUTIONS, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO. 1:25-CV-00302** |
| | ) | |
| **TROY FILLINGIM, individually,** | ) | |
| **KAELYN FILLINGIM, individually,** | ) | |
| **FILLINGIM FARMS, INC., and** | ) | |
| **FLINT FARMS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ANSWER AND COUNTERCLAIM

Defendants Troy Fillingim, Fillingim Farms, Inc., Kaelyn Fillingim, and Flint Farms, LLC, hereby respond to the allegations in the Complaint filed by Nutrien Ag Solutions, Inc., in paragraphs like-numbered thereto and pleads as follows:

## AS FOR THE ALLEGATIONS REGARDING THE PARTIES

1. All Defendants deny the allegations of Paragraph 1, except they admit, upon information and belief, that Nutrien is a Delaware corporation with its principal place of business in Colorado.

2. Defendant Troy Fillingim admits the allegations of Paragraph 2.

3. Kaelyn Fillingim admits the allegations of Paragraph 3.

4. Fillingim Farms, Inc. ("Fillingim Farms") admits the allegations of Paragraph 4.

5. Flint Farms, LLC ("Flint Farms") admits the allegations of Paragraph 5.

## JURISDICTION AND VENUE

6. All Defendants admit that the United States District Court for the Middle District of Alabama, Southern Division, has subject matter jurisdiction over the action. All Defendants deny any express or implied allegations of wrongdoing along with all remaining allegations of Paragraph 6.

7. All Defendants admit that the United States District Court for the Middle District of Alabama, Southern Division, is the appropriate place to lay venue. All Defendants deny any express or implied allegations of wrongdoing along with all remaining allegations of Paragraph 7.

## AS FOR THE ALLEGED STATEMENT OF FACTS

8. The allegations of Paragraph 8 include a statement for which  no response is required.

9. Fillingim Farms denies the allegations of Paragraph 9 and incorporates herein the allegations of its Counterclaim. Fillingim Farms demands strict proof thereof. Fillingim Farms denies that Nutrien's Exhibit A is the actual Credit Application completed by Troy Fillingim for Fillingim Farms. Fillingim Farms further alleges that this copy of the Credit Application has been altered by a third-party unknown to any Defendant.

10. All Defendants deny each and every allegation of Paragraph 10, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

11. All Defendants deny each and every allegation of Paragraph 11, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

## AS FOR THE DECEMBER 2023 PROMISSORY NOTES AND SECURITY AGREEMENTS

12. All Defendants deny each and every allegation of Paragraph 12, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

13. All Defendants deny each and every allegation of Paragraph 13, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

14. All Defendants deny each and every allegation of Paragraph 14, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

15. All Defendants deny each and every allegation of Paragraph 15, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

## CROPS AND EQUIPMENT

16. All Defendants deny each and every allegation of Paragraph 16, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

17. All Defendants deny each and every allegation of Paragraph 17, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

18. All Defendants deny each and every allegation of Paragraph 18, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

19. All Defendants deny each and every allegation of Paragraph 19, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

20. All Defendants deny each and every allegation of Paragraph 20, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

21. All Defendants deny each and every allegation of Paragraph 21, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

22. All Defendants deny each and every allegation of Paragraph 22, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

## COUNT I

23. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

24. All Defendants deny each and every allegation of Paragraph 24, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

25. All Defendants deny each and every allegation of Paragraph 25, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

All Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 25.

## AS FOR COUNT II

26. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

27. All Defendants deny each and every allegation of Paragraph 27, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

28. All Defendants deny each and every allegation of Paragraph 28, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

All Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 28.

## AS FOR COUN III

29. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

30. All Defendants deny each and every allegation of Paragraph 30, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

31. All Defendants deny each and every allegation of Paragraph 31, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

All Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 31.

## AS FOR COUNT IV

32. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

33. All Defendants deny each and every allegation of Paragraph 33, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

34. All Defendants deny each and every allegation of Paragraph 34, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

35. All Defendants deny each and every allegation of Paragraph 35, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

All Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 35.

## AS FOR COUNT V

36. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

37. All Defendants deny each and every allegation of Paragraph 37, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

All Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 37.

## AS FOR COUNT VI

38. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

39. All Defendants deny each and every allegation of Paragraph 39, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

40. All Defendants deny each and every allegation of Paragraph 40, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

41. All Defendants deny each and every allegation of Paragraph 41, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 41.

## AS FOR COUNT VII

42. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

43. All Defendants deny each and every allegation of Paragraph 43, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

44. All Defendants deny each and every allegation of Paragraph 44, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

45. All Defendants deny each and every allegation of Paragraph 45, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 45.

## AS FOR COUNT VIII

46. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

47. All Defendants deny each and every allegation of Paragraph 47, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

48. All Defendants deny each and every allegation of Paragraph 48, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

49. All Defendants deny each and every allegation of Paragraph 49, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

50. All Defendants deny each and every allegation of Paragraph 50, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 50.

## AS FOR COUNT IX

51. Defendants adopt and incorporate by reference their responses contained in the preceding paragraphs as if fully set forth herein.

52. All Defendants deny each and every allegation of Paragraph 52, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

53. All Defendants deny each and every allegation of Paragraph 53, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

54. All Defendants deny each and every allegation of Paragraph 54, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

55. All Defendants deny each and every allegation of Paragraph 55, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

56. All Defendants deny each and every allegation of Paragraph 56, demand strict proof thereof, and incorporate herein the allegations of their Counterclaim.

Defendants deny that Nutrien is entitled to any of the relief it seeks in the unnumbered *ad damnum* clause following paragraph 56.

## **FURTHER DEFENSES**

### **First Defense**

Defendants plead the general issue and denies all material allegations in Nutrien's Complaint not expressly admitted herein.

### **Second Defense**

Nutrien's claims are barred by waiver or release.

### **Third Defense**

Nutrien's claims are barred by estoppel.

### **Fourth Defense**

Nutrien's claims for equitable remedies are barred by its unclean hands and/or inequitable conduct.

### **Fifth Defense**

Nutrien's claims are barred by Nutrien's misrepresentation, deceit, and/or willful concealment of facts.

**Sixth Defense**

Nutrien's claims are barred by the statute of frauds.

**Seventh Defense**

Nutrien's claims are barred by setoff, recoupment, and/or because Nutrien failed to credit all amounts Defendants paid.

**Eighth Defense**

Nutrien's claims are barred by failure of consideration, Nutrien's lack of performance, fraud, and/or illegality.

**Ninth Defense**

Nutrien failed to properly credit Defendants' payment and/or mitigate its alleged damages.

**Tenth Defense**

Nutrien's claims are barred by accord and satisfaction.

**Eleventh Defense**

Defendants plead the defense of recoupment for overpayment.

**Twelfth Defense**

Even if the allegations of the Complaint were true, which Defendants deny, there are additional facts and circumstances which would avoid the ordinary legal consequences of such facts.

**Thirteenth Defense**

Nutrien has failed to elect remedies.

### Fourteenth Defense

Nutrien is estopped to recovery by reason of its own course of conduct and/or because it violated the duty of good faith and fair dealing owed to Defendants.

### Fifteenth Defense

Nutrien's claims are barred by payment or discharge.


Defendants hereby reserve the right to assert such other and further defenses and/or counterclaims as may be developed over the course of discovery in this action.

## COUNTERCLAIM

Pursuant to Rule 13 of the *Federal Rules of Civil Procedure*, Defendants assert the following Counterclaim:

### Parties

1. Nutrien Ag Solutions, Inc. ("Nutrien"), is a Delaware corporation with its principal place of business in Loveland, Colorado.

2. Troy Fillingim is a resident citizen of Coffee County, Alabama.

3. Kaelyn Fillingim is a resident citizen of Coffee County, Alabama.

4. Flint Farms, LLC is an Alabama limited liability company.

5. Fillingim Farms, Inc., is an Alabama corporation.

### Jurisdiction & Venue

6. The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between the parties, and the amount in controversy exceeds $75,000.00. Further, the Court may exercise ancillary jurisdiction over the counterclaims because they arise out of the same transaction or occurrence that is the subject of Nutrien's claims.

7. The Court has personal jurisdiction over Nutrien because, among other things, Nutrien purposefully availed itself of the laws and privileges of the state of Alabama by conducting business in Alabama, engaging in conduct causing harm in Alabama, and commencing this action in Alabama.

8. Venue is proper in this district because, among other things, Defendants suffered injuries in this district due to Nutrien's conduct, Nutrien is subject to

personal jurisdiction in this district, and/or Nutrien consented to venue in this district.

## **Facts Common to All Counts**

9.  Troy Fillingim, owner of Fillingim Farms, Inc., is a fourth-generation farmer, and his daughter, Kaelyn Fillingim, owner of Flint Farms, LLC, is a fifth-generation farmer.

10. The Fillingim Family has farmed in South Alabama for over 100 years.

11. Nutrien is a retail supplier of agricultural products in Alabama.

12. Flint Farms is not and has never been a customer of Nutrien.

13. Kaelyn Fillingim is not and has never been a customer of Nutrien.

14. Kaelyn Fillingim, individually, has never applied for a line of credit with Nutrien.

15. Flint Farms has never applied for a line of credit from Nutrien.

16. Troy Fillingim, individually, has never applied for a line of credit from Nutrien.

## **COUNT 1 – BREACH OF CONTRACT**

17. On March 17, 2022, Nutrien's Employee, Jonathan Bailey ("Bailey") emailed to Troy Fillingim a blank Credit Application ("Application") for Fillingim Farms to obtain a line of credit to purchase agricultural products from Nutrien.

18. There exists four (4) separate versions of Fillingim Farms' Application, all dated March 17, 2022.

19. Each version of the Application varies significantly from the others.

20. Several fields on at least one version of the Application were completed by an unknown third party in handwriting not recognized by any Defendant.

21. Nutrien's Exhibit "A") (attached hereto as Defendants' Exhibit "1") has been redacted. Nonetheless, the Application is missing information in the following fields: (1) "State of Primary Residence;" (2) Social Security Number; (3) Date of Birth; (4) Kaelyn Fillingim's date of birth. In addition, in Nutrien's version of the Application, the form indicates that Fillingim Farms has been operating for 20 years. Below that field appear two fields completed in the unknown handwriting. To be clear, Mr. Fillingim nor any person on his behalf completed the fields written in blue ink.

22. On March 23, 2022, Mr. Fillingim, on behalf of Fillingim Farms, emailed to Bailey a completed Application (attached hereto as Defendant's Exhibit "2"). This version of the Application included data in the original handwriting in the "Social Security Number" and "Date of Birth" fields. Further, this application included Kaelyn Fillingim's date of birth. This version of the Application does not list Troy Fillingim personally under "Corporate Officers, Partners, Members, and Guarantors." The field "Number of years farming" is empty. The information for "Primary State and county where crops grow" is printed in different handwriting not recognized by any Defendant.

23. On January 18, 2023, Bailey emailed to Troy Fillingim a third version of the Application (attached hereto as Defendant's Exhibit "3") which is different from the first two. Again, this application features the same unknown blue handwriting as Defendant's Exhibit 1.

24. On July 16, 2024, Mr. Fillingim requested a copy of the Application. The same date, Bailey sent to Mr. Fillingim a fourth version of the application (attached hereto as Defendant's Exhibit "4"), which again substantially differed from the others. In fact, this version of the Application lists Pea River Farms, LLC as a corporate officer, partner, member or guarantor.

25. Fillingim Farms requested a line of credit of $675,000.00. On August 14, 2023, Bailey sent to Troy Fillingim a sales report for 2022 for Fillingim Farms which lists an aggregate balance of $1,085,280.17, nearly twice the credit limit requested by Fillingim Farms. The 2023 sales report lists an aggregate balance of $1,021,880.07, hundreds of thousands of dollars more than the credit limit requested by Fillingim Farms. The 2024 sales report lists an aggregate balance of $463,452.77.

26. Nutrien breached the contract by failing to deliver to Fillingim Farms an "Approval Letter" confirming Nutrien's agreement to extend credit to Fillingim Farms.

27. Nutrien breached the contract by failing to annually set forth in writing any renewal, adjustment, or extension of terms of Fillingim Farms' credit line.

28. Nutrien breached the contract by continuing to allow credit purchases by Fillingim Farms when an event of default had occurred and continued.

29. Nutrien breached the contract by continuing to deliver products to Fillingim Farms in excess of the credit limit requested by Fillingim Farms.

30. Nutrien breached the contract by allowing Fillingim Farms' aggregate purchases to exceed their credit limit.

31. Nutrien breached the contract by failing to provide to Fillingim Farms a monthly statement of account. As a result of Nutrien's breach, Fillingim Farms was unable to dispute charges within the 60-day requisite period listed in the Application.

32. The very Application upon which Nutrien purports to have extended credit to Fillingim Farms has been altered by a third party. Fillingim Farms alleges that an employee or agent of Nutrien altered the Application, as evidenced by the only application sent to Nutrien by Fillingim Farms lacking the blue handwriting that no Defendant recognized in all other versions of the Application. As such, Fillingim Farms asserts that the Application itself is VOID and not an adequate basis for the debt.

33. As a direct, proximate, and foreseeable result of Nutrien's breaches of the contract, Fillingim Farms has suffered, and will continue to suffer injury and damages.

WHEREFORE, Defendant Fillingim Farms prays of a judgment in their favor and against Nutrien for all damages, together with interest, attorney's fees, and costs, and such other or further relief as the Court deems appropriate.

## <u>COUNT 2 – UNJUST ENRICHMENT</u>

34. Defendants adopt and incorporate by reference the factual allegations of the preceding paragraphs of this Counterclaim as if fully set forth herein.

35. On August 14, 2024, Bailey sent to Troy Fillingim cumulative billing sheets for 2022, 2023, and 2024, after having not consistently provided invoices to Fillingim Farms.

36. Troy Fillingim was able to obtain some invoices for 2024 through a prior attorney, and few, if any, of those invoices matched the 2024 cumulative billing sheet sent by Bailey.

37. The billing sheet for 2022 indicates that Fillingim Farms purchased chemicals totaling $1,084,280.17.

38. The billing sheet for 2023 indicates that Fillingim Farms purchased chemicals totaling $1,021,880.07.

39. The billing sheet for 2024 indicates that Fillingim Farms purchased chemicals in the sum of $463,452.77.

40. Nutrien provided <u>some</u> delivery tickets for 2024, however none were provided at delivery in 2022 or 2023.

41. On April 10, 2023, Fillingim Farms made payment to Nutrien of $175,000.00, via check number 6802.

42. As a result of a verbal agreement between owners of Fillingim Farms and Flint Farms, on April 25, 2023, Flint Farms, on behalf of Fillingim Farms, paid to Nutrien $130,000.00, via check number 1047.

43. Fillingim Farms believes payments were made to Nutrien from now-closed bank accounts, so Fillingim Farms cannot readily access records to accurately represent the totals.

44. There are multiple other entities and/or farmers loosely associated with Troy Fillingim of Fillingim Farms.

    a. In 2022, all of the entities loosely associated with Troy Fillingim and/or Fillingim Farms farmed approximately 2,266 combined acres, however crops were not commingled and were owned and harvested by individual farmers and/or entities.

    b. In 2023, all of the entities loosely associated with Troy Fillingim and/or Fillingim Farms farmed approximately 2,355 combined acres, however crops were not commingled and were owned and harvested by individual farmers and/or entities.

    c. In 2024, all of the entities loosely associated with Troy Fillingim and/or Fillingim Farms farmed approximately 2,542 combined acres, however crops were not commingled and were owned and harvested by individual farmers and/or entities.

    d. Pea River Farms is a farming entity owned by Troy Fillingim's former wife, Shanna Phillips. Pea River Farms was Nutrien's customer prior to ceasing operations. Pea River Farms had its own line of credit with Nutrien. Pea River Farms was invoiced for their own products by Nutrien. Pea River Farms farmed its own acreage separate and apart from Fillingim Farms.

        i. In 2022, Pea River Farms farmed a total of 474.04 acres of cotton and 22.81 acres of corn.

e. Ashley Jenkins is a farmer who also serves as an agricultural technician at Fillingim Farms. Mr. Jenkins owns and operates his own farm completely apart and separate from any entity owned or farmed by the Fillingim family.

    i. In 2022, Ashley Jenkins farmed 68 acres of cotton only.

    ii. In 2023, Jenkins farmed 69 acres of cotton and 15 acres of corn.

    iii. In 2024, Jenkins farmed 6 acres of corn and 24 acres of peanuts.

f. Short Row Farms is a farming entity owned by Troy Fillingim which farms its own acreage separate and apart from Fillingim Farms.

    i. In 2022, Short Row Farms farmed 43 acres of cotton and 20 acres of corn.

    ii. In 2023, Short Row Farms farmed 33 acres of cotton, 21 acres of peanuts, and 4 acres of corn.

    iii. In 2024, Short Row Farms farmed 58 acres of corn, 31 acres of cotton, and 20 acres of peanuts.

g. Kaelyn Fillingim farms her own acreage separate and apart from Fillingim Farms. Troy Fillingim is Kaelyn's farm manager.

    i. In 2022, Kaelyn Fillingim farmed 481.17 aces of cotton, 25.5 acres of corn, and 346.3 acres of peanuts.

    ii. In 2023, Kaelyn Fillingim farmed 457 acres of cotton, 173 acres of peanuts, and 22 acres of corn.

    iii. In 2024, Kaelyn Fillingim farmed 456 acres of cotton.

h. Kaelyn Fillingim owns Flint Farms which farms its own acreage separate and apart from Fillingim Farms and Kaelyn Fillingim. Troy Fillingim is employed as Flint Farms' farm manager.

    i. In 2022, Flint Farms farmed 62.3 acres of corn.

    ii. In 2023, Flint Farms farmed 72 acres of peanuts, and 22 acres of corn.

    iii. In 2024, Flint Farms farmed 353 acres of cotton and 42 acres of peanuts.

i. James Bunce is employed as an agricultural technician by Fillingim Farms, however he is also a self-employed individual farmer who farms his own acreage separate and apart from Fillingim Farms and all other entities.

    i. Bunce did not farm in 2022.

    ii. Bunce did not farm in 2023.

    iii. In 2024, Bunce farmed 6 acres of corn and 306 acres of peanuts.

j. Troy Fillingim is the owner of Fillingim Farms, however he independently owns and operates a farm as a sole proprietor as well, farming acres separate and apart from all other entities.

    i. In 2022, Troy Fillingim farmed 270.3 acres of cotton and 170.8 acres of peanuts.

    ii. In 2023, Troy Fillingim farmed 368 acres of cotton, 194 acres of peanuts, and 55 acres of corn.

      iii.  In 2024, Troy Fillingim farmed 103 acres of corn, 336 acres of cotton, and 471 acres of peanuts.

  k.  Troy Fillingim owns Fillingim Farms which farms its own acreage separate and apart from all other farmers and/or entities.

      i.  In 2022, Fillingim Farms planted 229.82 acres of cotton, as evidenced by FSA Form 578, Report of Commodities, Farm and Tract Detail Listing.

      ii.  In 2022, Fillingim Farms planted 37.84 acres of corn, as evidenced by FSA Form 578, Report of Commodities, Farm and Tract Detail Listing.

      iii.  In 2022, Fillingim Farms planted no peanuts, as evidenced by FSA Form 578, Report of Commodities, Farm and Tract Detail Listing.

45. In 2022, the following farmers and/or entities farmed acreage within Coffee and Pike Counties, Alabama: Fillingim Farms, Kaelyn Fillingim, Troy Fillingim, Pea River Farms, Ashley Jenkins, and Short Row Farms.

46. In 2022, Nutrien invoiced Fillingim Farms for approximately 496.24 tons of fertilizer, worth $415,645.00. Nutrien billed Fillingim Farms for spreading fertilizer on approximately 3,135 acres, however Fillingim Farms only farmed 266 acres of cotton and corn in 2022. The cost for fertilizer for the correct acreage would be approximately $47,348.00, resulting in overbilling of $367,546.00. Based upon Nutrien's sales sheet, Nutrien billed Fillingim Farms for spreading over 500 pounds of fertilizer per acre. Nutrien's own soil sample maps indicate a minimum

of 50 pounds of fertilizer should be spread per acre, and a maximum of 500 pounds of fertilizer should be spread per acre. Fillingim Farms customarily spread 400 pounds of fertilizer per acre. In 2022, Fillingim Farms only requested that Nutrien spread 400 pounds of fertilizer per acre. As a result of Nutrien's over-billing for fertilizer, Nutrien was or would be unjustly enriched by payment for fertilizer not requested, purchased, or delivered by or to Fillingim Farms.

a. If Nutrien billed Fillingim Farms for any other entity's fertilizer, there would be a total of 1,734 acres of cotton and corn fertilized. This would mean the fertilizer billed to Fillingim Farms would be spread at a rate of 572 pounds per acre. Nutrien's own soil sample map indicates a minimum of 50 pounds of fertilizer should be spread per acre with a maximum of 500 pounds of fertilizer should be spread per acre. Fillingim Farms customarily requests that 400 pounds of fertilizer be spread per acre. In 2022, Fillingim Farms requested Nutrien spread 400 pounds of fertilizer per acre of cotton and corn. Even if Nutrien billed Fillingim Farms to spread fertilizer on the entirety of the 1,734 acres, there is still an over-billing of approximately $133,000.00. As such, Nutrien would be unjustly enriched by payment of any amount in excess of the cost fertilizer spread on Fillingim Farms' acreage, but considering the possible incorrect billing of other entities' fertilizer to Fillingim Farms' account, Nutrien would still be unjustly enriched by payment exceeding $415,645.00.

47. In 2022, Nutrien billed Fillingim Farms for application fees for spreading fertilizer over 3,135 acres of corn and cotton. Fillingim Farms only farmed 266 acres of cotton and corn. Nutrien over-billed Fillingim Farms approximately $22,952.00 in excess application fees. As such, Nutrien was or would be unjustly enriched by any payment toward the excess application fee charges of $22,952.00.

   a. Even if Nutrien billed Fillingim Farms for any and all other farmers/entities loosely associated with Troy Fillingim, Nutrien was or would be unjustly enriched by payment of application fees to spread fertilizer on more than 2,810 acres.

48. The 2022 Fillingim Farms sales sheet indicates that Dolomite Bulk was spread over 134 acres around July 29, 2022, at a cost of $7371.10. This fertilizer is only spread in late May or early June. As such, Nutrien was unjustly enriched by any payment for Dolomite Bulk as Nutrien did not deliver or spread Dolomite Bulk.

49. On July 29, 2022, Nutrien billed Fillingim Farms $13,904.00 for limestone calcium bulk which would is only spread during late May or early June. As such, Nutrien was unjustly enriched by payment toward this amount as this product was not delivered to Fillingim Farms or spread over its acreage.

50. In 2022, Nutrien billed Fillingim Farms for 242.50 gallons of Atrazine, a spray specifically for corn. Based upon the recipe Bailey provided to agricultural technician Jenkins (1 quart Powermaxx, 64 ounces Atrazine, 32 ounces ProZinc, and one quart Strike Force per 100 gallons of water per acre), Fillingim Farms

only required 18.5 gallons to cover 37 acres, resulting in Nutrien being unjustly enriched by the $89,400 overage.

    a. Even if Nutrien billed Fillingim Farms for Atrazine to cover the 168 acres of corn farmed by all of the entities loosely associated with Fillingim Farms, resulting in Nutrien being unjustly enriched by the $3,160 overage.

51. On June 20, 2022, Bailey provided to Ashley Jenkins the recipe for a burn-down spray for peanuts which called for 12 ounces of Gramoxine 2.0 or 8 ounces of Gramoxine 3.0, 24 ounces of Butyrac, 16 ounces of dual, and 1 quart of Liberate per 100 gallons of water per acre. On July 18, 2022, Bailey provided to Ashley Jenkins the recipe for a regular peanut spray which called for 4 ounces of cadre, 24 ounces of Chorothionil, 24 ounces of Butyrac, two ounces of radiate, and one quart of Liberate per 100 gallons of water per acre. Nutrien billed Fillingim Farms for 240 gallons of Butyrac. Fillingim Farms did not farm any peanuts in 2022, therefore Nutrien would be unjustly enriched by any payment for Butyrac in 2022.

    a. In the event that Nutrien billed Fillingim Farms for all of the entities loosely associated with Troy Fillingim, the collective entities only required 200 gallons of Butyrac to cover all acreage, resulting in Nutrien being unjustly enriched by the $860.00 overage.

52. In 2022, Nutrien billed Fillingim Farms for 17.5 gallons of Monsoon and 250 gallons of Chlorothalonil, fungicides specifically used to treat peanut crop. Fillingim Farms did not farm any peanuts in 2022. Therefore, Nutrien was unjustly enriched by payment for any amount of either fungicide.

a. In the event that Nutrien billed Fillingim Farms for the 532 acres of peanuts farmed by other entities loosely associated with Troy Fillingim, Nutrien still overbilled by approximately $1,400.00, resulting in Nutrien's unjust enrichment of any payment applied to the total billed for Monsoon.

53. In 2022, Nutrien billed Fillingim Farms for 80 bags of corn seed. One bag of corn seed plants approximately five acres of corn. Fillingim Farms only farmed enough acres of corn to require 8 bags of corn seed totaling $2,000, resulting in overbilling of $18,000. Additionally, Nutrien billed Fillingim Farms for an additional variety of corn seed totaling $6,500, however this variety was not planted at all in 2022. As such, Nutrien was unjustly enriched by the application of payment to any corn seed exceeding $2,000.00.

54. Even if Nutrien billed Fillingim Farms for corn seed for all farmers and entities loosely associated with Troy Fillingim, there would still exist an overage of $18,000.00, as only 34 bags were required to plant 168 acres of corn, and one variety of corn billed to Fillingim Farms was not used by any entity. As such, Nutrien was unjustly enriched by any payment in excess of 34 bags of corn seed.

55. In 2022, Nutrien billed Fillingim Farms for 5 gallons of Folex for a total of $380.00. No employee of Fillingim Farms ordered nor received any Folex. Therefore, Nutrien was unjustly enriched by $380.00 for the product not received.

56. Gramoxone 2.0 and Gramoxone 3.0 are chemicals used for burn-down prior to planting corn and cotton. They're also used to as a once-per-season spray for peanuts.

a. On June 20, 2022, Bailey provided agricultural technician Jenkins the recipe for pre-plant burn-down which called for 12 ounces of Gramoxone 2.0 or 8 ounces Gramoxine 3.0, 24 ounces of Butyrac, 16 ounces of Dual, and one quart Liberate per 100 gallons of water per acre.

b. Fillingim Farms only required 66.5 gallons of Gramoxone but were billed for 935 gallons, resulting in Nutrien being unjustly enriched by the $41,688.00 overage.

c. In the event that Nutrien billed Fillingim Farms for entities and farmers associated with Troy Fillingim, Nutrien overbilled all entities by 467 gallons resulting in Nutrien being unjustly enriched by the $22,416.00 overage.

57. Lecitech is a surfactant sprayed with Gramoxone in the pre-plant burn-down. Based on the formula of one-quart Lecitech per 100 gallons of water, Fillingim Farms only required 40 gallons of Lecitech. Nutrien billed Fillingim Farms for 84 gallons of Lecitech, resulting in Nutrien being unjustly enriched by the $2,660 overage.

a. In the event that Nutrien billed for Lecitech purchased by other farmers and entities associated with Troy Fillingim, all entities required only 70 gallons of Lecitech resulting in Nutrien being unjustly enriched by the $532.00 overage.

58. Sonalan is a chemical sprayed on peanuts at the pre-emerge phase. On May 19, 2022, Bailey sent to agricultural technician Jenkins a recipe for peanut spray

which consisted of 24 ounces of Sonalan and 0.22 pounds of Strongarm per acre. Fillingim Farms did not farm peanuts in 2022, but Nutrien billed Fillingim Farms for 110 gallons. As such, Nutrien was unjustly enriched by any payment applied to any amount of Sonalan billed to Fillingim Farms.

    a. In the event that Nutrien billed to Fillingim Farms Sonalan ordered by the farmers or entities associated with Troy Fillingim, Nutrien still over-charged for 10 additional gallons of Sonalan over the 100 gallons needed for the total acreage of all the other entities. As such, Nutrien was unjustly enriched by any payment toward the $500 over-charge.

59. Strikeforce is a surfactant used on corn. On April 22, 2022, Bailey provided to Jenkins a recipe consisting of 1-quart Powermaxx, 64 ounces Atrazine, 32 ounces ProZinc, and one-quart Strikeforce per 100 gallons of water per acre. Fillingim Farms would only require 3 gallons of Strikeforce but were billed for 17.5 gallons of Strikeforce. As such, Nutrien was unjustly enriched by any payment toward the 14.5 un-needed gallons of Strikeforce.

    a. In the event that Nutrien billed to Fillingim Farms the Strikeforce ordered by the farmers and entities associated with Troy Fillingim, Nutrien still overbilled by 2 gallons of Strikeforce totaling $600.00. As such, Nutrien was unjustly enriched by any payment toward the $600 overage.

60. In 2022, Fillingim Farms was billed for 36 gallons of DualMagnum, however Fillingim Farms only required 29 gallons, resulting in Nutrien being unjustly enriched by the $2,304 overage.

61. In 2022, Nutrien billed Fillingim Farms for 108 pounds of Elatus, a peanut spray, however Fillingim Farms did not farm peanuts in 2022. Therefore, Nutrien was unjustly enriched by any payment toward the Elatus not purchased or used by Fillingim Farms.

62. In 2022, Nutrien billed Fillingim Farms for 77.5 gallons of Herbimax, a peanut spray, however Fillingim Farms did not farm peanuts in 2022. As such, Nutrien was unjustly enriched by any payment toward the $1,358.43 charge for Herbimax.

63. In 2022, Nutrien billed Fillingim Farms for 110 gallons of LI700 Lecitech, which would is mixed with Gramoxone for pre-plant burn-down. Fillingim Farms only required 40 gallons, therefore Nutrien was unjustly enriched by the 70 gallons excessively charged by Nutrien.

64. In 2022, Nutrien billed Fillingim Farms for 200 gallons of Liberate, a surfactant mixed with Roundup. Fillingim Farms only required 40 gallons of Liberate, resulting in Nutrien being unjustly enriched by the payment for the 164 gallons billed in excess of the required amount.

65. In 2022, Nutrien billed Fillingim Farms for 410.08 tons of limestone calcium bulk, a fertilizer for peanuts. Fillingim Farms did not farm peanuts in 2022. Therefore, Nutrien was unjustly enriched by any payment for limestone calcium.

66. In 2022, Nutrien charged Fillingim Farms for 275 gallons of Lokomotive which was not ever requested by Fillingim Farms. Fillingim Farms believes Bailey ordered Lokomotive in an attempt to "pad the bill" for Fillingim Farms. As such,

Nutrien was unjustly enriched by any payment toward the $4,950.00 amount billed for Lokomotive.

67. In 2022, Nutrien billed Fillingim Farms for 48 gallons of Radiate, a peanut spray, however Fillingim Farms did not farm peanuts in 2022. Therefore, Nutrien was unjustly enriched by any payment applied to the $14,160.00 charge for Radiate not ordered or received by Fillingim Farms.

68. In 2022, Nutrien billed Fillingim Farms for 900 gallons of Roundup which is sprayed on cotton and corn. Fillingim Farms only required approximately 180 gallons for their crops, resulting in Nutrien overcharging Fillingim Farms for 719 gallons not purchased by Fillingim Farms. As such, Nutrien was or would be unjustly enriched by any payment toward the 719 gallon over-charge.

69. In 2022, Nutrien billed Fillingim Farms for 44 gallons of Unforgiven, a peanut spray to treat army worms, however Fillingim Farms did not farm peanuts in 2022. Therefore, Nutrien was unjustly enriched by any payment applied to the $5,500.00 charge for Unforgiven not ordered or used by Fillingim Farmed.

70. In 2022, Nutrien billed Fillingim Farms for 168 packages of Vault, an inoculant used to treat peanuts, however Fillingim Farms did not farm peanuts in 2022. Therefore, Nutrien was unjustly enriched for any payment applied to the $2,175.00 charge for Vault nor ordered or used by Fillingim Farms.

71. In 2022, Nutrien billed Fillingim Farms for 750 gallons Warrant, a pre-plant herbicide. Fillingim Farms only required 85 gallons to treat their crop, resulting

in Nutrien overcharging Fillingim Farms by 665 gallons. As such, Nutrien was unjustly enriched by any payment applied to the $16,625.00 over-charge.

72. In 2022, Nutrien billed Fillingim Farms for 375 gallons of Xtendimax, an herbicide used to kill pigweed. Fillingim Farms only required use of 130 gallons, therefore, Nutrien overcharged Fillingim Farms by 640 gallons. Therefore, Nutrien was unjustly enriched by any payment toward the $29,580.00 overcharge.

73. In 2023, the following farmers and/or entities farmed acreage within Coffee and Pike Counties, Alabama: Fillingim Farms, Kaelyn Fillingim, Troy Fillingim, Short Row Farms, Ashley Jenkins, and Flint Farms.

74. In 2023, Nutrien billed Fillingim Farms for 561 tons of fertilizer. Nutrien's own soil sample analysis indicates that a minimum of 50 pounds of fertilizer and a maximum of 500 pounds of fertilizer should be spread per acre of crops. Fillingim Farms farmed 636 acres of cotton and 5 acres of corn which would require use of 132 tons of fertilizer. This calculation would indicate that Nutrien overcharged Fillingim Farms by 429.50 tons totaling $274,924.80. As such, Nutrien was unjustly enriched by any payment applied toward the $274,924.80 overcharge.

   a. In the event that Nutrien billed Fillingim Farms for the acreage farmed by the other entities associated with Troy Fillingim, Nutrien would have spread 663.8 pounds of fertilizer per acre, which is a gross deviation from the industry standard of 400 pounds per acre. Fillingim Farms only ordered 400 pounds of fertilizer per acre. As such, Nutrien still overbilled by $168,828.00. Further, many of the varieties of fertilizer were invoiced in

July 2023, but fertilizer would have been spread in late May or early June, so Fillingim Farms is not confident that all of the fertilizer was spread as billed. Therefore, Nutrien was unjustly enriched by any payment applied toward the overcharge.

75. In 2023, Nutrien billed Fillingim Farms for 98.98 tons of Rainbow/Bonanza, a peanut fertilizer. Fillingim Farms only required 22.77 tons for the 138 acres of peanuts they farmed in 2023. As such, Nutrien was unjustly enriched by the $57,157.50 overage.

76. In 2023, Nutrien billed Fillingim Farms application fees totaling $36,616.01 which would have covered 4,677 acres. Nutrien actually only spread fertilizer over 1,598 acres farmed by Fillingim Farms, resulting in Nutrien overcharging Fillingim Farms $57,157.50. Therefore, Nutrien was or would be unjustly enriched by any payment toward the excess charge of $57,157.50.

   a. In the event Nutrien billed Fillingim Farms for the fertilizer purchased by the other entities associated with Troy Fillingim, resulting in Nutrien being unjustly enriched by the $4,536.00 overage.

   b. Nutrien spread all fertilizer. Fillingim Farms and all entities associated with Troy Fillingim farmed a total of 2,355 acres. The application charges indicate that fertilizer was spread over 4,677 acres in 2023. Fillingim Farms only requested fertilizer be spread over 3,018 acres resulting in application fees being charged for spreading fertilizer over 567 acres that

they did not actually cover. Therefore, Nutrien was unjustly enriched by the $4,536.00 overcharge.

77. In 2023, Nutrien billed Fillingim Farms for 880 pounds of acephate, an insecticide sprayed on cotton crops. In 2023, Fillingim Farms farmed 636 acres of cotton which required 320 pounds of acephate, resulting in Nutrien being unjustly enriched by the $5,040.00 overage.

   a. In the event that Nutrien billed Fillingim Farms for all of the acephate purchased by the entities associated with Troy Fillingim, the 1,564 acres of cotton farmed collectively only required 782 pounds of acephate resulting in Nutrien overcharging the entities by $900. As such, Nutrien was unjustly enriched by the $900 overage.

78. In 2023, Nutrien billed Fillingim Farms for 100 gallons of atrazine, a spray used on corn prior to its emergence. Atrazine is sprayed at the rate of 32 ounces per acre and required only 6 gallons to spray the 25 acres of corn Fillingim Farms planted in 2023. Therefore, Nutrien was unjustly enriched by the $2,256.00 overage.

   a. In the event that Nutrien billed Fillingim Farms for the atrazine purchased by the other entities associated with Troy Fillingim, an overcharge still existed. The entities, including Fillingim Farms, planted 128 acres of corn requiring only 32 gallons of atrazine. Therefore, Nutrien was unjustly enriched by the $1,632.00 overage.

79. In 2023, Nutrien billed Fillingim Farms for 650 gallons of Boll Buster, a spray used to defoliate cotton. Fillingim Farms planted 636 acres of cotton which would only require 160 gallons of Boll Buster for coverage. As a result, Nutrien was or would be unjustly enriched by any payment applied to the $10,045.00 overage.

   a. In the event that Nutrien billed to Fillingim Farms the Boll Buster purchased by the other entities, Nutrien would be unjustly enriched by the $5,309.50 overage for the Boll Buster billed in excess of the 391 gallons needed to cover the entities' cumulative 1,564 acres.

80. In 2023, Nutrien billed Fillingim Farms for 532.50 gallons of Bravo, a fungicide spray for peanuts. Fillingim Farms required about 26 gallons to spray the peanut crop four or five times, resulting in Nutrien being unjustly enriched by the $13,156 overage.

81. In 2023, Nutrien billed Fillingim Farms for 22 gallons of Cadre, a peanut spray sprayed at the rate of two ounces per acre. Fillingim Farms planted 138 acres of peanuts which required only two gallons of Cadre. Therefore, Nutrien was unjustly enriched by any payment applied to the $3,900.00 overage.

   a. In the event that Nutrien billed to Fillingim Farms the Cadre purchased by the other entities, the entirety of the entities' acreage only required 11 gallons to cover the cumulative 636 acres, therefore Nutrien was unjustly enriched by the $2,145 overage.

82. In 2023, Nutrien billed Fillingim Farms for 66 bags of corn seed. Fillingim Farms only needed 7 bags of corn seed to plant 25 acres of corn. Therefore, Nutrien was unjustly enriched by the $12,740 overage.

    a. In the event that Nutrien charged the corn seed for the other entities to Fillingim Farms' account, Nutrien was unjustly enriched by any payment to the $9,100 overage because the entities needed 31 bags of corn seed to plant their cumulative 128 acres of corn.

83. In 2023, Nutrien billed Fillingim Farms for 14 gallons of Dimilin, a peanut worm spray. Fillingim Farms only required 4 gallons to spray their 138 acres of peanuts, resulting in Nutrien being unjustly enriched by the $1,300.00 overage.

84. In 2023, Nutrien billed Fillingim Farms for 247.5 gallons of DualMagnum, an herbicide sprayed on cotton which is sprayed at the rate of 16 ounces per acre. Fillingim Farms farmed 636 acres of cotton requiring 80 gallons of DualMagnum, resulting in Nutrien being unjustly enriched by the $11,690 overage.

    a. Even if Nutrien billed Fillingim Farms for the other entities' orders, all of the entities only required 195 gallons to treat the cumulative 1,564 acres of cotton, resulting in Nutrien being unjustly enriched by the $3,360 overage.

85. In 2023, Nutrien billed Fillingim Farms for 1,320 bags of peanut seeds. Fillingim Farms required 360 bags of peanut seeds to plant 138 acres of peanuts resulting in Nutrien being unjustly enriched by the $42,720 overage.

86. In 2023, Nutrien billed Fillingim Farms for 75 gallons of Gramaxone, a pre-plant burn down spray for cotton and corn and is additionally used to spray peanuts

once per season. Fillingim Farms required 9 gallons of Gramaxone to cover 138 acres of peanuts resulting in Nutrien being unjustly enriched by the $2,640 overage.

87. In 2023, Nutrien billed Fillingim Farms for 185 gallons of Halex, a spray combined with Atrazine for corn and is sprayed at a rate of 58 ounces per acre. Fillingim Farms required 11 gallons to cover 25 acres of corn, resulting in Nutrien being unjustly enriched by the $11,310 overage.

   a. In the event that Nutrien billed Fillingim Farms for the Halex purchased by all the entities, Nutrien billed for 127 gallons in excess of the required amount, resulting in Nutrien being unjustly enriched by the $8,255 overage.

88. In 2023, Nutrien billed Fillingim Farms for 65 gallons of Herbimax, a grass spray for peanuts. Fillingim Farms required 17 gallons to cover 138 acres of peanuts resulting in Nutrien being unjustly enriched by the $864 overage.

89. In 2023, Nutrien billed Fillingim Farms for 65 gallons of Intensity, a spray mixed with Herbimax and sprayed on peanuts. Fillingim Farms required 17 gallons to cover 138 acres of peanuts, resulting in Nutrien being unjustly enriched by the $2,976 overage.

90. In 2023, Nutrien billed Fillingim Farms for 427 gallons of Liberate, a surfactant mixed with Roundup. Fillingim Farms required only 100 gallons resulting in Nutrien being unjustly enriched by the $12,426 overage.

91. In 2023, Nutrien billed Fillingim Farms for 260 gallons of MadDog, 780 gallons of Makaze, and 1,360 gallons of Roundup Powermax, all Roundup products sprayed on Cotton. Fillingim Farms required 636 gallons to cover 636 acres of cotton resulting in Nutrien being unjustly enriched by the $8,484 overage. Further, Fillingim Farms did not even need the Roundup Powermax because there was enough other Roundup products to cover the farmed acres resulting in Nutrien being unjustly enriched by the $38,260 overage.

   a. In the event that Nutrien billed Fillingim Farms for the Roundup products purchased by all of the entities, the entities collectively required 1,600 gallons, resulting in Nutrien being unjustly enriched by the $22,400 overage.

92. In 2023, Nutrien billed Fillingim Farms for 55 gallons of Prowl, a pre-emerge spray for peanuts. Pre-emerge is sprayed in May or early June but neve in July when Nutrien charged Fillingim Farms for the spray. Therefore, Nutrien was unjustly enriched by the $2,210 charge for Prowl that could not have been sprayed.

93. In 2023, Nutrien billed Fillingim Farms for 220 bags of cotton seed. All of the cotton seed as billed after June 15 which is the latest date on which you can plant cotton seed. Fillingim Farms did not receive cotton seed from Nutrien, therefore, Nutrien was unjustly enriched by the $132,090.03 billed for cotton seed not received.

94. In 2023, Nutrien billed Fillingim Farms for 37.5 gallons of Monsoon. Fillingim Farms did not order nor receive this product in 2023, therefore Nutrien was unjustly enriched by the $2,250 charge.

95. In 2023, Nutrien billed Fillingim Farms for 20 gallons of Radiate, a peanut spray used twice per season. Fillingim Farms required four gallons to spray the peanut crop twice, resulting in Nutrien being unjustly enriched by the $4,720 overage.

96. In 2023, Nutrien billed Fillingim Farms for 102 gallons of Sniper, a peanut spray used to kill worms. Fillingim Farms required only 13 gallons to spray the 138 acres of planted peanuts, resulting in Nutrien being unjustly enriched by the $9,790 overage.

97. In 2023, Nutrien billed Fillingim Farms for 111.25 gallons Sonalan, a pre-emerge spray for peanuts. Fillingim Farms required only 34.5 gallons to treat 138 acres of peanuts, resulting in Nutrien being unjustly enriched by the $3,775 overage.

98. In 2023, Nutrien billed Fillingim Farms for 8.09 pounds of Strongarm, a pre-emerge herbicide for peanuts. Nutrien billed the product in strange amounts, like 1.76 pounds, 1.34 pounds, etc., while it is actually only sold in one-pound bottles. Fillingim Farms required only 2 pounds to treat 138 acres of peanuts, resulting in Nutrien being unjustly enriched by the $5,700 billing mistake.

99. In 2023, Nutrien billed Fillingim Farms for 880 gallons Strut and Xtendimax, herbicides used to kill pig weeds in cotton. Fillingim Farms required only 110 gallons to treat 636 acres, resulting in Nutrien being unjustly enriched by the $54,560 overage.

100.   In 2023, Nutrien billed Fillingim Farms for 52 gallons of Takedown, a cotton defoliant. Fillingim Farms required only 20 gallons resulting in Nutrien being unjustly enriched by the $2.420 overage.

101.   In 2023, Nutrien billed Fillingim Farms for 25 gallons of Unforgiven, an army worm spray for peanuts. Fillingim Farms required only 5 gallons to treat its 138 acres of peanuts, resulting in Nutrien being unjustly enriched by the $2,600 overage.

102.   In 2023, Nutrien billed Fillingim Farms for 15 bags of a wildlife forage mix that is only used for food plots and could not be planted in July when it was billed. Fillingim Farms did not order nor receive this product, resulting in Nutrien being unjustly enriched by the $300 charge.

103.   There are huge discrepancies between the 2024 invoices and the August 14, 2024, sales sheet

104.   The 2024 sales sheet and invoices include charges in extreme excess of any amount of products Fillingim Farms could use or would purchase. Fillingim Farms believes Nutrien billed Fillingim Farms for products delivered to or used by other farmers or entities, including, but not limited to Kaelyn Fillingim, Flint Farms, Pea River Farms, LLC, Ashley Jenkins, and Short Row Farms, LLC.

105.   Around June 18, 2024, Nutrien delivered chemicals to Fillingim Farms under order number 27089278. The delivery ticket lists "Andrew Armstrong" as the buyer. Andrew Armstrong is also a sales representative for Nutrien out of the Dothan, Alabama warehouse, and also owns Double A Farms. According to this

delivery ticket, the products were delivered to Andrew Armstrong DBA: Double A Farms, however someone marked through his name and address and hand-wrote "Fillingim Farms" for the buyer. Additionally, someone manually altered the quantity on the delivery ticket. This invoice was not listed on the 2024 sales sheet.

106.    Invoice number 27768250 indicates credits for 17 gallons of sodium hypochlorite, 80 pounds of acephate, 10 gallons of mepiquat chloride, and 6 pounds of flumioxazin, however none of these amounts or credits appear on the cumulative sales report provided by Bailey.

107.    Order number 27309722 indicates that Fillingim Farms purchased 1.91 gallons of Excelis Maxx and 40,950 pounds of nonregulated fertilizer compounds around July 31, 2024, however Fillingim Farms did not order any fertilizer nor fertilize any crops in July 2024. Fillingim Farms does not fertilize crops in late July.

108.    Order number 55269737 indicates that on July 25, 2024, Nutrien delivered 30 gallons of Butyrac, 90 gallons of Fontelis, 90 gallons of borosol, and 30 gallons of Scanner. The invoice dated 7/30/2024, indicated that the payment method was "cash on delivery." Based on invoices from Rabo, Fillingim Farms believes that Nutrien billed Fillingim Farms' Rabo account for these products, however the invoice indicates the payment method was cash on delivery. If Nutrien included this amount in the total they allege Fillingim Farms owes, Nutrien was or would be unjustly enriched by payment of this invoice, as Fillingim Farms does not

believe that Nutrien delivered product without payment based upon their own invoice.

109.   An invoice number 55264669 dated July 29, 2024, indicates that on July 5, 2024, Nutrien delivered to Fillingim Farms 17.68 tons of fertilizer and 180 gallons of Excelis Maxx. The invoice specifically states that the products were delivered to Fillingim Farms' "Banana Field." The invoice incorrectly identifies the Banana Field as a 90-acre field planted in miscellaneous crops, however the field is only 10 acres and was planted in another farmer's corn in 2024. Nutrien was aware of the actual size and acreage of the Banana Field as Nutrien themselves produced soil fertility maps. Fillingim Farms only planted five acres of corn in 2024, none of which was located at the Banana Field, as another farmer planted crops there. Additionally, the invoice indicates that the payment method was "cash on delivery." If Nutrien included this invoice in the total amount Fillingim Farms is alleged to owe, Nutrien was or would be unjustly enriched by payment of this invoice as the product was never delivered to Fillingim Farms. This belief is further bolstered by the fact that Nutrien did not prepare an invoice, clearly indicating payment upon delivery, for the products that were never delivered until almost a month after the date Nutrien claims to have delivered the product.

110.   On invoice number 55264665, dated July 29, 2024, Nutrien indicates that on July 5, 2024, 25.31 tons of fertilizer and 180 gallons of Excelis Maxx was delivered to the Banana Field. The invoice incorrectly identifies the Banana Field as a 130-acre field planted in miscellaneous crops, however, the Banana Field is a 10-acre

field that was planted in corn by another farmer in 2024. Nutrien was aware of the actual size and acreage of the Banana Field as Nutrien themselves produced soil fertility maps. The invoice indicates that cash upon delivery was required, so if Nutrien included this invoice in the total amount Nutrien alleges Fillingim Farms owes, Nutrien was or would be unjustly enriched by payment for products never delivered to Fillingim Farms. This allegation is further bolstered by the fact that Nutrien did not prepare an invoice until almost a month after Nutrien claims to have delivered the product to Fillingim Farms.

111.    Invoice number 55264651, dated July 29, 2024, indicates that another 12 tons of fertilizer and 180 gallons of Excelis Maxx were delivered to the Banana Field on July 2, 2024. The invoice incorrectly listed the Banana Field as a 65-acre field planted in miscellaneous crops, however the Banana Field is only a 10-acre field that was planted in corn by another farmer in 2024. Nutrien was aware of the actual size and acreage of the Banana Field as Nutrien themselves produced soil fertility maps. The invoice indicates cash due upon delivery, so if Nutrien included this invoice in the total they allege Fillingim Farms to owe, Nutrien was or would be unjustly enriched by payment of the invoice for products not actually delivered. Fillingim Farms' belief is furthered by the fact that Nutrien didn't prepare an invoiced for the products that were not even delivered until almost a month after the alleged delivery date.

112.    On July 31, 2024, Nutrien invoiced Fillingim Farms for 180 gallons of Excelis Maxx and 23.34 tons of fertilizer allegedly delivered to the Banana Field on July

9, 2024. The invoice incorrectly describes the Banana Field as 130 acres planted in miscellaneous crops, however the Banana Field is actually a 10-acre field planted in corn by another farmer in 2024. Nutrien was aware of the actual size and acreage of the Banana Field as Nutrien themselves produced soil fertility maps. The invoice indicates that cash was due upon delivery, so if Nutrien included this invoice in the amount they claimed Fillingim Farms owed, Nutrien was or would be unjustly enriched by payment of this invoice for products not even delivered.

113.    Invoice number 55649715 indicates credits to Fillingim Farms totaling $1,301.00, however these credits do not appear on the 2024 sales sheet. Fillingim Farms believes these credits were never posted to their account, and as such, Nutrien was or would be unjustly enriched by prior payment for these products. The invoice indicates a payment method of "cash on delivery" which leads Fillingim Farms to believe Nutrien claims to have refunded the products in cash upon return. Nutrien has never refunded an order to Fillingim Farms with cash.

114.    Transaction ID 1493956 indicates that indicates that 1,280.01 gallons of Fontelis were credited back to Fillingim Farms, however no such credit has been made to Fillingim Farms' account. As such, Fillingim Farms believes that Nutrien was or would be unjustly enriched by any payment made toward this transaction number.

115.    Invoice 54864793, dated June 25, 2024, indicates Fillingim Farms purchased 30 gallons of Liberate and 50 gallons of Strut 2x2.5, and that these products were

delivered by company vehicle to Houston County, Alabama. Fillingim Farms does not own nor farm any property in Houston County. Additionally, this invoice indicates cash was due upon delivery, so Nutrien was or would be unjustly enriched by payment of this invoice.

116.    Invoice # 55438596 indicates that on August 12, 2024, Nutrien delivered to Fillingim Farms 47.5 gallons of Besiege, 30 gallons of Absolute Maxx, and 50 gallons of Fontelis. These amounts are not listed on the Sales Sheet provided by Bailey. Fillingim Farms has never purchased Besiege from Nutrien. As such, Nutrien was or would be unjustly enriched by payment of this invoice.

117.    Invoice # 55501563, dated 8/26/2024, indicates that on August 16, 2024, 20 gallons of Besiege were delivered to Fillingim Farms by Nutrien. This charge is not listed on the sales sheet provided by Bailey. Additionally, Fillingim Farms has never purchased Besiege from Nutrien. As such, Nutrien was or would be unjustly enriched by payment of this invoice.

118.    Invoice number 55291112, dated July 25, 2024, indicates that on July 22, 2024, Nutrien delivered to Fillingim Farms 250 gallons of Roundup Powermax and 270 gallons of Liberty. Bailey told Troy Fillingim he would credit back to Fillingim Farms $7,560.00 for the Liberty as it did not work. No such credit appears, and as such, Nutrien was or would be unjustly enriched by payment of the invoice.

119.    Invoice # 54866206, dated June 25, 2024, indicates that on June 13, 2024, Nutrien delivered to Fillingim Farms 500 gallons of Roundup Powermax and 180 gallons of Liberty. Bailey represented to Troy Fillingim that he would credit

$5,040.00 back to Fillingim Farms as the Liberty did not work. This amount was not credited back to Fillingim Farms. As such, Nutrien was or would be unjustly enriched by payment of the invoice.

WHEREFORE, Defendants pray for a judgment in their favor and against Nutrien in an amount sufficient to disgorge any benefit unjustly obtained by Nutrien and retained, along with interest, attorney's fees, and costs, and such other, further, or different relief this Court deems appropriate.

## COUNT 3 – FRAUD & DECEIT

120.    Defendants adopt and incorporate by reference the factual allegations of the preceding paragraphs of this Counterclaim as if fully set forth herein.

121.    Nutrien controlled the flow of billing information to all Defendants and owed them a duty of honesty and good faith.

122.    Nutrien engaged in deceptive and fraudulent conduct by, among other things, using incomplete, inaccurate, or misleading records or billing practices to confound the records and induce Defendants to pay for products, fees, and penalties they did not know.

123.    Nutrien employee Andrew Armstrong also owns and operates Double A Farms. Armstrong is a sales representative for Nutrien. Armstrong ordered chemicals for his own farm and billed the totals to Fillingim Farms on June 18, 2024, in Order # 27089278. This is evidenced by the delivery ticket where Armstrong's name is marked through and "Fillingim Farms" is handwritten beside it.

124. In 2023, Nutrien began heavily pressuring Troy Fillingim and Kaelyn Fillingim to sign promissory notes and security agreements, individually and on behalf of their respective businesses.

125. Wendy Glass ("Glass"), an employee of Nutrien, was Troy and Kaelyn Fillingim's contact at Nutrien while negotiating the promissory notes and security agreements.

126. Glass sent numerous text messages to Troy Fillingim pressuring him to sign a promissory note and security agreement individually and on behalf of Fillingim Farms.

127. Kaelyn Fillingim expressed to Glass that she was very hesitant to sign a promissory note or security agreement individually or on behalf of Flint Farms because neither Flint Farms nor Kaelyn Fillingim were not Nutrien's customers.

128. Glass further told Kaelyn Fillingim that Glass and Troy Fillingim were working out the payment arrangement outside of the security agreements and promissory notes, and that those documents were just formalities.

129. Kaelyn Fillingim's hesitation is documented by her refusal to sign the documents for approximately a month after Glass sent them to her. Glass was persistent and made numerous promises that the dates in the notes and agreements were not going to be enforced by Nutrien.

130. Glass promised Troy Fillingim that late payments would not be reflected in any reports made to credit reporting agencies.

131.  In an email exchange between Glass and Kaelyn Fillingim, Glass misrepresented to Kaelyn that the December due date contained in the notes and agreements was not accurate, further indicating that Nutrien was not requiring a payment be made under the notes.

132.  Jonathan Bailey, sales representative for Nutrien, billed numerous amounts of chemicals and fertilizer to one 10-acre field called the "Banana Field." Bailey knew the size of the field, as Nutrien themselves produced soil fertility maps of all properties farmed by Fillingim Farms. Furthermore, in a text message exchange between Fillingim Farms' agricultural technician Ashley Jenkins ("Jenkins") and Bailey, Bailey specifically listed the fields Fillingim Farms farmed, further evidencing Bailey's knowledge of the existence of more than just the Banana Field.

133.  In a text exchange between Troy Fillingim and Wendy Glass, Glass misrepresented to Troy Fillingim that Glass and Bailey would waive the interest once a payment had been made to the account *after* the promissory notes and security agreements were signed.

134.  Glass's communication with the Fillingim family makes it clear that Glass knew that Kaelyn Fillingim and Flint Farms were not Nutrien's customers, and their involvement was only as security for the debt.

135.  Troy Fillingim confronted Jonathan Bailey about consistently delivering products not requested in excess of the credit limit Fillingim Farms applied for. In fact, on one occasion, Bailey physically worked on the farm running a tractor

"to make up for" exceeding the credit limit, evidencing that Bailey knew what the credit limit was and willfully and wantonly exceeded it numerous times.

136.    As previously plead in the above paragraphs, Nutrien billed Fillingim Farms for products they never requested or received and for amounts far in excess of those Fillingim Farms requested or actually used. These deceptive billing practices are what Nutrien based the promissory notes and security agreements repayment terms upon.

137.    All of the defendants relied upon Nutrien's employee's misrepresentations to their detriment by continuing to do business with Nutrien, signing the promissory notes and security agreements, and incurring costs defending against Nutrien's allegations.

138.    Nutrien's conduct was so wanton and reckless and displayed such an utter disregard for these Defendnats' rights as to warrant the imposition of punitive damages. Nutrien's employees' actions were horrific and predatory in nature.

139.    Based upon Defendants' research, Nutrien has filed numerous lawsuits against other farmers in nearly identical situations. Many of these farmers allege the same circumstances as alleged here, evidencing a common scheme throughout Nutrien as a whole.

WHEREFORE, Defendants pray for a judgment in their favor and against Nutrien in an amount sufficient to compensate Defendants for their injuries and damages, punitive damages in an amount sufficient to punish Nutrien and deter

similar misconduct in the future, along with interest, attorney's fees, and costs, and such other, further, or different relief this Court deems appropriate.

## **COUNT FOUR – DECLARATORY JUDGMENT**

140.    Defendants adopt and incorporate by reference the factual allegations of the preceding paragraphs of this Counterclaim as if fully set forth herein.

141.    Defendants bring this claim under the Declaratory Judgment Act, 28 U.S.C. § 2201.

142.    Upon information and belief, all parties interested in the outcome of this claim are parties to this action and properly before the Court. Due to Nutrien's deceptive practices described in the paragraphs throughout this counterclaim, there may be additional parties who must be added as defendants in this Counterclaim. Defendants' hands are clean and they are prepared to do equity.

143.    The Defendants seek the Court's judgment as to the parties' respective rights and obligations, including a judgment finding that Nutrien engaged in inappropriate accounting and billing practices to Defendants' detriment by, in part, billing for chemicals not received by any Defendant, billing amounts exceeding the amount actually ordered and used by Fillingim Farms, consistently exceeding Fillingim Farms' credit limit, and billing other entities' products to Fillingim Farms.

WHEREFORE, Defendants pray the Court will enter a judgment declaring the parties' respective rights and obligations, and award Defendants such relief at law and equity to which they may be entitled including, without limitation, imposing an

appropriate constructive trust to preserve and protect monies Defendants paid to Nutrien and business property used as security in security agreements.

## **COUNT FIVE -ACCOUNTING AND OTHER EQUITABLE RELIEF**

144.    Defendants adopt and incorporate by reference the factual allegations of the preceding paragraphs of this Counterclaim as if fully set forth herein.

145.    Pursuant to the Credit Application, Nutrien agreed to provide monthly statements of account accurately detailing all transactions.

146.    Fillingim Farms believes that Nutrien billed products ordered and delivered to multiple other entities to Fillingim Farms' line of credit.

147.    Nutrien's sales representative, Jonthan Bailey knew Fillingim Farms' credit limit and consistently exceeded such credit limit.

148.    Nutrien's invoices do not match the yearly sales sheets provided to Fillingim Farms by Jonathan Bailey <u>after</u> the promissory notes and security agreements were signed by all Defendants.

149.    Nutrien falsified invoices for products not delivered to any Defendant and coerced and fraudulently induced these Defendants into signing promissory notes and security agreements for amounts not actually owed by any Defendant by intentionally making promises that negated the confines of the agreements and notes whilst knowing the promises were false.

150.    Defendants requested that Nutrien provide full and complete records, but Nutrien continues to refuse to provide full, clear, and complete information,

alleging that it does not matter what the invoices total because these Defendants (by fraudulent inducement) signed promissory notes and security agreements.

WHEREFORE, under the circumstances, and in order to satisfy the demands of justice, Defendants demand that the Court order equitable relief in the form of an accounting or other appropriate equitable remedy, including without limitation ordering Nutrien to disgorge all benefit, gain, or profit it received or may receive from its misconduct, and requiring Nutrien to pay Defendants' attorney's fees and the costs associated with defending against this action.

### COUNT SIX – NEGLIGENCE

151.   Defendants adopt and incorporate by reference the factual allegations of the preceding paragraphs of this Counterclaim as if fully set forth herein.

152.   Nutrien owed a duty to supervise and train its employees to ensure they exercised reasonable care in dealing with customers, including these Defendants.

153.   Nutrien failed to uphold that duty as evidenced by Jonathan Bailey, Andrew Armstrong, and Wendy Glass' behavior and acts described in the preceding paragraphs.

154.   Jonathan Bailey invoiced Defendants for products that could not and would not be used by Defendants.

155.   Nutrien knew or should have known of its employees' fraudulent and deceptive accounting yet did nothing to correct the problems.

156.   As a direct and proximate result and consequence of Nutrien's negligence, Defendants have suffered and will continue to suffer injuries and damages.

WHEREFORE, Defendants pray for a judgment in their favor and against Nutrien in an amount sufficient to compensate Defendants for their injuries and damages, along with interest, attorney's fees and costs, and such other, further, or different relief as the Court deems appropriate.

## COUNT SEVEN – FRAUDULENT INDUCEMENT

157.  Defendants adopt and incorporate by reference the factual allegations of the preceding paragraphs of this Counterclaim as if fully set forth herein.

158.  Nutrien controlled the flow of billing information to all Defendants and owed them a duty of honesty and good faith.

159.  Nutrien engaged in deceptive and fraudulent conduct by, among other things, using incomplete, inaccurate, or misleading records or billing practices to confound the records and induce Defendants to pay for products, fees, and penalties they did not know.

160.  Nutrien employee Andrew Armstrong also owns and operates Double A Farms. Armstrong is a sales representative for Nutrien. Armstrong ordered chemicals for his own farm and billed the totals to Fillingim Farms on June 18, 2024, in Order # 27089278. This is evidenced by the delivery ticket where Armstrong's name is marked through and "Fillingim Farms" is handwritten beside it.

161.  In 2023, Nutrien began heavily pressuring Troy Fillingim and Kaelyn Fillingim to sign promissory notes and security agreements, individually and on behalf of their respective businesses.

162.   Wendy Glass ("Glass"), an employee of Nutrien, was Troy and Kaelyn Fillingim's contact at Nutrien while negotiating the promissory notes and security agreements.

163.   Glass sent numerous text messages to Troy Fillingim pressuring him to sign a promissory note and security agreement individually and on behalf of Fillingim Farms.

164.   Kaelyn Fillingim expressed to Glass that she was very hesitant to sign a promissory note or security agreement individually or on behalf of Flint Farms because neither Flint Farms nor Kaelyn Fillingim were not Nutrien's customers.

165.   Glass further told Kaelyn Fillingim that Glass and Troy Fillingim were working out the payment arrangement outside of the security agreements and promissory notes, and that those documents were just formalities.

166.   Kaelyn Fillingim's hesitation is documented by her refusal to sign the documents for approximately a month after Glass sent them to her. Glass was persistent and made numerous promises that the dates in the notes and agreements were not going to be enforced by Nutrien.

167.   Glass promised Troy Fillingim that late payments would not be reflected in any reports made to credit reporting agencies.

168.   In an email exchange between Glass and Kaelyn Fillingim, Glass misrepresented to Kaelyn that the December due date contained in the notes and agreements was not accurate, further indicating that Nutrien was not requiring a payment be made under the notes.

169.    Jonathan Bailey, sales representative for Nutrien, billed numerous amounts of chemicals and fertilizer to one 10-acre field called the "Banana Field." Bailey knew the size of the field, as Nutrien themselves produced soil fertility maps of all properties farmed by Fillingim Farms. Furthermore, in a text message exchange between Fillingim Farms' agricultural technician Ashley Jenkins ("Jenkins") and Bailey, Bailey specifically listed the fields Fillingim Farms farmed, further evidencing Bailey's knowledge of the existence of more than just the Banana Field.

170.    In a text exchange between Troy Fillingim and Wendy Glass, Glass misrepresented to Troy Fillingim that Glass and Bailey would waive the interest once a payment had been made to the account *after* the promissory notes and security agreements were signed.

171.    Glass's communication with the Fillingim family makes it clear that Glass knew that Kaelyn Fillingim and Flint Farms were not Nutrien's customers, and their involvement was only as security for the debt.

172.    Troy Fillingim confronted Jonathan Bailey about consistently delivering products not requested in excess of the credit limit Fillingim Farms applied for. In fact, on one occasion, Bailey physically worked on the farm running a tractor "to make up for" exceeding the credit limit, evidencing that Bailey knew what the credit limit was and willfully and wantonly exceeded it numerous times.

173.    As previously plead in the above paragraphs, Nutrien billed Fillingim Farms for products they never requested or received and for amounts far in excess of those Fillingim Farms requested or actually used. These deceptive billing

practices are what Nutrien based the promissory notes and security agreements repayment terms upon.

174.    All of the defendants relied upon Nutrien's employee's misrepresentations to their detriment by continuing to do business with Nutrien, signing the promissory notes and security agreements, and incurring costs defending against Nutrien's allegations.

175.    Nutrien's conduct was so wanton and reckless and displayed such an utter disregard for these Defendnats' rights as to warrant the imposition of punitive damages. Nutrien's employees' actions were horrific and predatory in nature.

176.    Based upon Defendants' research, Nutrien has filed numerous lawsuits against other farmers in nearly identical situations. Many of these farmers allege the same circumstances as alleged here, evidencing a common scheme throughout Nutrien as a whole.

177.    Furthermore, Nutrien adulterated Fillingim Farms' Credit Application as evidenced by the differing versions of the Application.

WHEREFORE, Defendants pray for judgment in their favor and against Nutrien for contract rescission, damages, punitive damages, interest, attorney's fees and costs, and such other, further, or different relief this Court deems appropriate.

## COUNT EIGHT – DECEPTIVE TRADE PRACTICES

178.    Defendants adopt and incorporate by reference the factual allegations of the preceding paragraphs of this Counterclaim as if fully set forth herein.

179.   Nutrien had made false and/or misleading statements of fact concerning the reason for, existence of, or amounts of, price reductions to the Defendants' detriment.

180.   Nutrien Sales Representative Jonathan Bailey made numerous promises to refund purchases that were not actually refunded or credited against Fillingim Farms' account.

181.   Nutrien billed Defendants for hundreds of thousands of dollars of products exceeding Fillingim Farms' established credit limit.

182.   Nutrien failed to deliver substantial amounts of products they billed Fillingim Farms for.

183.   Nutrien's employees made misrepresentations of the authority of a salesperson, representative, or agent to negotiate the final terms of a transaction. Wendy Glass made specific promises that she and Jonathan Bailey could and would waive interest upon Defendants making a payment. Wnedy Glass further made specific representations to Kaelyn Fillingim and Troy Fillingim that the terms of the promissory notes were not being enforced.

184.   After receipt of payment for goods, Nutrien failed to ship, deliver or furnish chemicals and fertilizers ordered by Fillingim Farms within the time stated on invoices or otherwise represented. In fact, the invoice date of many invoices is *after* the alleged date of delivery.

185.   Nutrien, having been aware of that fact, failed to issue refunds within ten business days.

186.    Nutrien intentionally misrepresented that a warranty or a guarantee conferred or involved certain rights or remedies, such as refund for a product not performing as advertised when Jonathan Bailey made promises to refund purchases of chemicals that did not work as advertised but failed to actually issue those refunds.

187.    Nutrien and its employees and/or agents systematically made material representations to Defendants by telephone, text message, and email in an effort to fraudulently obtain money and property from Defendants by making false promises to waive interest and not enforce the terms of the promissory notes.

WHEREFORE, Defendants pray for judgment in their favor and against Nutrien for damages, punitive damages, attorney's fees and costs, and such other, further, or different relief this Court deems appropriate.

### Jury Demand

Defendants demand trial by jury on all issues, claims, and counterclaims so triable.

Respectfully submitted this 11th day of September, 2025.

/s/ Alyse Fowler
Alyse Fowler (PHI086)
ASB-1344-Z13D

**ALYSE FOWLER LAW LLC**
P. O. Box 130
Elba, AL 36323
(334) 697-4020
Alyse@AlyseFowlerLaw.com

### CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of September 2025, the foregoing Answer and Counterclaim were electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Alyse Fowler
Of Counsel