## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| **NUTRIEN AG SOLUTIONS, INC.,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Case No.: 1:25-cv-00302-RAH-SMD** |
| | ) |
| **TROY FILLINGIM, individually;** | ) |
| **KAELYN FILLINGIM, individually;** | ) |
| **FILLINGIM FARMS, INC.,** | ) |
| **a corporation; and** | ) |
| **FLINT FARMS, LLC,** | ) |
| **a limited liability company,** | ) |
| | ) |
| **Defendants.** | ) |

### BRIEF IN SUPPORT OF MOTION TO DISMISS
### DEFENDANTS' AMENDED COUNTERCLAIM

Nutrien Ag Solutions, Inc. ("Nutrien") submits this Brief in Support of its contemporaneously filed Motion to Dismiss Defendants' Amended Counterclaim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure as follows:

### INTRODUCTION

In their amended answer, Troy Fillingim, Kaelyn Fillingim, Fillingim Farms, Inc., and Flint Farms, LLC (collectively, "Defendants") submitted an amended counterclaim alleging that Nutrien is liable to them for breach of contract, unjust enrichment, fraud and deceit, declaratory judgment, accounting and other equitable relief, negligence, fraudulent inducement, and deceptive trade practices. (Doc. 37).

As background, this is an action for breach of promissory notes and security agreements executed by Defendants, and for breach of an open account for the sale of various agricultural products.

## RELEVANT PROCEDURAL HISTORY

Nutrien initiated this action by filing a Complaint on April 23, 2025. (Doc. 1). Defendants Kaelyn Fillingim and Flint Farms, LLC were served with the summons and complaint on June 4, 2025. (Docs. 6-7). On August 25, 2025, Nutrien filed a Motion to Dismiss Defendant's Counterclaim and a brief in support of said motion. (Docs. 19-20). On August 28, 2025, this Court held a telephone conference to address Nutrien's Motion to Dismiss Defendants' Counterclaim. On August 29, 2025, this Court entered an Order instructing Defendants to file a motion for leave to amend with their proposed amended counterclaim. (Doc. 24). On November 19 2025, Defendants filed an [Amended] Answer and Counterclaim (the "Amended Counterclaim"). (Doc. 37). Nutrien now timely moves to dismiss the Amended Counterclaim.

## STANDARD OF REVIEW

When considering a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court construes the complaint in the light most favorable to the plaintiff and accepts the well-pled factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In contrast, allegations that are conclusory in nature and that lack factual

support are not to be credited. *Id*. In evaluating the sufficiency of a plaintiff's pleadings, a court can make reasonable inferences in the plaintiff's favor, but it is not required to draw the plaintiff's inferences. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of a plaintiff's allegations. *Id*. (cleaned up); *see Iqbal*, 556 U.S. at 681; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).

Thus, to survive a motion to dismiss, the complaint must contain factual matter sufficient to state a claim for relief "that is plausible on its face." *Twombly*, 550 U.S. at 570. A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Simply stated, the *Twombly-Iqbal* standard requires a plaintiff to allege enough facts in a complaint to at least "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. In applying the *Twombly-Iqbal* plausibility standard, courts must follow a "two-pronged approach of first separating out the complaint's conclusory legal allegations and then determining whether the remaining well-pleaded factual allegations, accepted as true, plausibly give rise to an entitlement to relief." *Franklin v. Curry*, 738 F.3d 1246, 1251 (11th Cir. 2013).

# ARGUMENT

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants' Amended Counterclaim should be dismissed as it remains deficient. Although this Court afforded Defendants another opportunity to allege facts to survive a motion to dismiss, their Amended Counterclaim remains a shotgun pleading.

Additionally, several of the Defendants' claims in the Amended Counterclaim fail to state any claim upon which relief can be granted, causing them to fail as a matter of law. Moreover, Defendants asserts equitable remedies where adequate legal remedies exist, and their fraud-based claims do not meet the heightened pleading standard required under Rule 9(b). For these reasons, and as further detailed below, the Amended Counterclaim should be dismissed in its entirety.

## I.    THE AMENDED COUNTERCLAIM IS A SHOTGUN PLEADING AND ALL CLAIMS MUST BE DISMISSED.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Amended Counterclaim is due to be dismissed as it is a shotgun pleading. "Shotgun pleadings" are complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure. *See Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F. 3d 1313, 1320 (11th Cir. 2015). A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FED. R. CIV. P. 8(a)(2); *see Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021).

Additionally, a plaintiff is required to "state its claims . . . in numbered paragraphs, each limited as far as practicable to a single set of circumstances." FED. R. CIV. P. 10(b); *see Barmapov*, 986 F.3d at 1324. Further, "[i]f doing so would promote clarity," Rule 10(b) also requires that "each claim founded on a separate transaction or occurrence ... be stated in a separate count ...." *Id.* The "self-evident" purpose of these rules is "to require the pleader to present his claims discretely and succinctly, so that[ ] his adversary can discern what he is claiming and frame a responsive pleading." *Barmapov*, 986 F.3d at 1324 (quoting *Weiland*, 792 F. 3d at 1320)).

Shotgun pleadings are flatly forbidden by the Federal Rules of Civil Procedure. *Barmapov*, 986 F.3d at 1324. According to the Eleventh Circuit, such pleadings are "calculated to confuse the 'enemy,' and the court, so that theories for relief not provided by law and which can prejudice an opponent's case, especially before the jury, can be masked." *Barmapov*, 986 F.3d at 1324 (quoting *Weiland*, 792 F.3d at 1320).

Here, the Amended Counterclaim is a shotgun pleading as it is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action." *Weiland*, 792 F. 3d at 1322. *See, e.g., Chudasama v. Mazda Motor Corp.*, 123 F. 3d 1353, 1359 n.9 (11th Cir. 1997) (holding that a complaint is a shotgun pleading when the "reader of the complaint must speculate as to which factual allegations pertain to which count."). Specifically, the Amended

Counterclaim spans more than fifty pages and includes hundreds of paragraphs of factual allegations, yet it fails to clearly link those allegations to the specific counts asserted and which Defendants the factual allegations apply to. For example, the counterclaim contains extensive narrative about historical farming practices, acreage farmed by unrelated entities, and alleged discrepancies in invoices, but does not explain how these facts support Defendants' individual claims, forcing both Nutrien and the Court to speculate as to which allegations pertain to which claim.

Additionally, allegations regarding promises and misrepresentations by Nutrien employees are scattered throughout the Amended Counterclaim, but it does not identify which statements relate to the unjust enrichment claim, fraud claim, or fraudulent inducement claim, nor does it clarify which Defendant allegedly relied on those statements.

As a result, Defendants have failed to state claims upon which relief can be granted, and the Amended Counterclaim is a shotgun pleading that must be dismissed in its entirety. *See Barmapov*, 986 F.3d at 1325-26.

## II. DEFENDANTS TROY FILLINGIM, FILLINGIM FARMS, INC. AND FLINT FARMS, LLC HAVE WAIVED EACH CLAIM ALLEGED IN THE AMENDED COUNTERCLAIM THAT ARISES FROM ALLEGED CONDUCT PRIOR TO THE EXECUTION OF THE OPERATIVE PROMISSORY NOTES.

Under Alabama law, unless fraud is involved, "a release supported by a valuable consideration, unambiguous in meaning, will be given effect according to

the intention of the parties . . . ." *Boggan v. Waste Away Grp., Inc.*, 585 So. 2d 1357, 1359 (Ala. 1991) (quoting *Jehle–Slauson Const. Co.,* supra, at 719–20)). *See also* Ala. Code § 12-21-109 ("All receipts, releases and discharges in writing ... must have effect according to their terms and the intentions of the parties thereto."); *Nix v. Henry C. Beck Co.*, 572 So.2d 1214, 1217 (Ala. 1990).

According to the Alabama Supreme Court, a general release applies to both contract and tort claims. *See Roberson Excavation, Inc. v. Dale Cnty. Water Auth.*, No. 1:15-CV-939-MHT, 2016 WL 5799051, at *7 (M.D. Ala. Sept. 9, 2016), *report and recommendation adopted,* No. 1:15CV939-MHT, 2016 WL 5843214 (M.D. Ala. Oct. 3, 2016) (quoting *Nix*, 572 So. 2d at 1216)) ("With a general release, the parties obviously intended to release all claims – contract claims as well as tort claims ... If the parties had wanted to limit the release, they could have expressly reserved and excepted certain claims, including tort claims."). Moreover, when parties to a contract agree to settle a dispute any claims that arise from that dispute is moot. *See Compass Bank v. Limon*, 464 F. App'x 782, 787–88 (11th Cir. 2012) (affirming dismissal when counterclaimants executed a document that contained a release and "expressly waived their ability to counterclaim."); *ITT Rayonier Inc. v. United States,* 651 F.2d 343, 343 (5th Cir.1981) ("Generally settlement of a dispute between parties renders moot any case between them growing out of that dispute.")

Here, in forbearance of pursuing immediate collection against Defendants Fillingim Farms and Troy Fillingim, Nutrien entered into secured promissory notes with Troy Fillingim (the "Troy Note") on September 27, 2023; Fillingim Farms (the "Fillingim Farms Note") on December 7, 2023; and Flint Farms (the "Flint Farms Note") on December 7, 2023 (collectively, the "Notes"). The Notes contain, in pertinent part, the following provisions:

> **Acknowledgement of Debt**: Borrower acknowledges the Principal and Interest reflected in this Note are accurate and that he is responsible for paying the indebtedness.

> **Waivers:** Borrower, to the extent not prohibited by applicable law or regulation, hereby jointly and severally, (a) waives as to this debt or any renewal, modification, extension or refinancing thereof all rights of exemption under the Constitution or laws of Alabama or any other state as to real or personal property; (b) waives demand, presentment, notice of non-payment, protest, notice of protest, notice of dishonor, all other notice, suit against any party, diligence in collection of this Note, the release of any party primarily or secondarily liable thereon or any collateral pledged as security, and all other requirements necessary to hold Borrower liable hereunder; (c) agrees and consents to any one of more extensions or postponements of time of payment of this Note or any other indulgences with respect hereto, without notice thereof to any of them, and without release of liability as to any Borrower or any of them; and (d) waives and releases any defense to the Obligation that exists or has existed at any time in the past including but not limited to any offset or claim for damages against Lender.

(*See* Complaint, Doc. 1-1, Ex. B p.3, Ex. D p.3, Ex. F p.3) (emphasis added). The language regarding Defendants' release and waiver of claims regarding their obligation to pay the debt owed under the Notes is clear and comprehensive and encompasses each claim asserted by Defendants to the extent their claims relate to the alleged actions or inaction of Nutrien prior to the operative dates.  More specifically, it appears Defendants' entire breach of contract claim relates to events occurring prior to September and December 2023, and large portions of the remaining claims relating to facts occurring prior to the operative dates of the Notes.

## III.  DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR BREACH OF CONTRACT.

To establish a prima facie breach of contract claim, a party must plausibly allege: "(1) a valid contract binding upon the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Forsyth Consulting, Inc. v. Zoe's Kitchen, Inc.*, No. 2:14-CV-02349-JHE, 2017 WL 1349176, at \*9 (N.D. Ala. Apr. 10, 2017) (quoting *Shaffer v. Regions Fin. Corp.*, 29 So. 3d 872, 880 (Ala. 2009)). As for the first element, a valid contract consists of "an offer and an acceptance, consideration, and mutual assent to the essential  terms of the agreement." *Forsyth*, 2017 WL 1349176 at \*8 (quoting *Armstrong Bus. Servs., Inc. v. AmSouth Bank*, 817 So. 2d 665, 673 (Ala. 2001)).

In the instant action, Defendants' breach of contract claim is due to be dismissed because they have failed to allege their own performance under the

contract. *See Fed. Home Loan Mortg. Corp. v. Capps*, No. 2:16-CV-01713-JHE, 2019 WL 1028008 (N.D. Ala. Mar. 4, 2019); *Bias v. Cenlar Agency, Inc.*, No. 2:15-CV-00768-SGC, 2018 WL 2365428, at *5 (N.D. Ala. May 24, 2018) (dismissing similar breach of contract claim due to borrower's admitted nonperformance); *Tidmore v. Citizens Bank & Tr.*, 250 So. 3d 577, 590 (Ala. Civ. App. 2017) (borrower "cannot establish his own performance under the mortgage contract, and, therefore, he failed to present evidence of an essential element of his breach-of-contract counterclaim").

Additionally, Defendants attempt to cast doubt as to the validity of the Contract by alleging that it has been "altered by a third party." (Amended Counterclaim, Doc. 37 ¶ 32). To the extent that the Contract <u>was</u> altered by a third party, which Nutrien does not admit, the material terms of the Contract offered by Nutrien and the Contracts attached to the Amended Counterclaim are the same. (*See* Complaint, Doc. 1-1, Ex. A; Amended Counterclaim, Doc. 37-1, Doc. 37-2, doc., and doc.-1). Therefore, the purported alterations were immaterial, and the Agreement is valid. *See Winter v. Pool*, 100 Ala. 503, 505, 14 So. 411, 411–12 (1893) ("An immaterial, formal alteration, not changing the legal effect of the contract, is harmless, no matter by whom made."); *New Amsterdam Cas. Co. v. W.T. Taylor Const. Co.*, 12 F.2d 972, 975–76 (5th Cir. 1926) ("A contract may be modified by adding provisions which do not change the legal effect of those contained in the original contract.").

Additionally, Defendants allege that "[o]n January 18, 2023, [Jonathan] Bailey emailed to Troy Fillingim a third version of the Application," Defendants' Exhibit 3, and the Application "feature[d] the same unknown blue handwriting as [Nutrien's] Exhibit 1." (Amended Counterclaim, Doc. 37 ¶ 23, Doc. 37-2; *see also* Complaint, Doc. 1-1). Notably, Defendant Troy Fillingim executed the Agreement, that contains the allegedly "unknown blue handwriting" on March 17, 2022 – one year *before*, according to Defendants, the Agreement was emailed to him. Thus, Defendants' contentions have no merit as Troy Fillingim executed the Agreement showing mutual assent to the essential terms of the allegedly modified Agreement. *See Forsyth*, 2017 WL 1349176, at *12 ("Typically, mutual assent to the terms of a contract is evidenced by the signatures on the contract."); *Dannelly Enterprises, LLC v. Palm Beach Grading, Inc.,* 200 So. 3d 1157, 1162 (Ala. 2016) ("The purpose of a signature on a contract is to show mutual assent....") (citation modified).

After executing the Agreement, accepting its benefits, signing the Notes, receiving the Demand Letter, and even allowing this action to proceed, Defendants *now* attempt to challenge the Agreement's validity only after Fillingim Farms is called upon to honor its obligations. Alabama law does not permit such conduct. *See Lyles v. Pioneer Housing Systems, Inc.*, 858 So. 2d 226, 229 (Ala. 2003) ("It is well established that a plaintiff cannot simultaneously claim the benefits of a contract and

repudiate its burdens and conditions.") (citation, alterations and quotation marks omitted).

Accordingly, because Defendants have not plausibly alleged nor can they plausibly allege the essential elements of a breach of contract claim, this claim fails as a matter of law and must be dismissed.

## IV. DEFENDANTS HAVE FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT

### A. Defendants' Breach of Contract Claim to the Extent One Exists Affords Defendants With an Adequate Remedy at Law.

In Alabama, unjust enrichment is an equitable remedy and may only be asserted when there is no adequate remedy at law. *N. Assur. Co. of Am. v. Bayside Marine Const., Inc.*, No. CIV. A. 08-222-KD-B, 2009 WL 151023, at *4 (S.D. Ala. Jan. 21, 2009) (dismissing breach of contract and bad faith denial of coverage claims because there was "adequate remedy at law for damages under those theories of recovery."). *See also Validsa, Inc. v. PDVSA Svs., Inc.*, 424 Fed. Appx. 862, 873 (11th Cir. 2011) (affirming district court's dismissal of unjust enrichment counterclaim on the basis that it failed "on the showing of an express contract.").

Here, it is clear that Nutrien extended credit for purchases over multiple years under the Agreement. Although Defendants dispute the accuracy of certain invoices and allege overbilling, those disputes arise from the contractual relationship and are

properly addressed through their alleged breach of contract claim to the extent it exists.

**B. Defendants have failed to plausibly allege their Unjust Enrichment Claim.**

Unjust enrichment is an equitable remedy available only when no adequate remedy at law exists. Here, Defendants' own pleadings confirm the existence of an express contractual relationship and they assert, among others, breach of contract and fraud claims based on the same facts.

**1. <u>Defendants Have Failed to Allege Sufficient Facts to Support an Unjust Enrichment Claim Grounded in Fraud.</u>**

Moreover, to the extent that Defendants have alleged an unjust enrichment theory grounded in fraud, this fares no better as the facts alleged do not meet Federal Rule of Civil Procedure 9(b)'s heightened pleading requirement. *See Omnipol, A.S. v. Multinational Defense Svcs., LLC*, 32 F.4th 1298, 1308 (11th Cir. 2022) (affirming district court's dismissal of unjust enrichment claim grounded in fraud when the amended complaint was silent as to the "key details" required to satisfy Rule 9(b)'s heightened pleading standard).

Here, Defendants' allegations fall far short of this standard. The Amended Counterclaim contains numerous paragraphs describing Nutrien's alleged overbilling and invoice discrepancies, but fails to specify *who* made specific fraudulent statements to Defendants, *what* misrepresentations were made in relation

to which invoice and/or transaction, *when* the alleged misrepresentations were made in relation to the invoice and/or transaction, *where* the alleged allegations were made, and *how* the alleged misrepresentations were false and how Defendants relied on them to their detriment. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1237 (11th Cir. 2008) (noting a plaintiff's requirement to plead "the who, what, when, where, and how" of the allegedly fraudulent behavior to satisfy Rule 9(b)'s pleading requirements).

Therefore, because Defendants have failed to plausibly allege their unjust enrichment claim, it is due to be dismissed.

## V.    DEFENDANTS' FRAUD, DECEIT, AND FRAUDULENT INDUCEMENT CLAIMS ARE NOT PLEAD WITH PARTICULARITY.

Defendants have alleged fraud and deceit as well as fraudulent inducement claims against Nutrien. However, because Defendants have failed to satisfy the heightened pleading requirement under Rule 9(b) of the Federal Rules of Civil Procedure by pleading these claims with particularity, they are due to be dismissed.

### A.    Defendants Have Failed to Plead their Fraud and Deceit Claims with Particularity.

Under Alabama law, fraud is "(1) a false representation (2) of a material existing fact (3) relied upon the plaintiff (4) who was damaged as a proximate result of the alleged misrepresentation." *P & S Bus., Inc. v. S. Cent. Bell Tel. Co.*, 466 So. 2d 928, 930 (Ala. 1985) (citing *Earnest v. Pritchett-Moore, Inc.*, 401 So. 2d 752

(Ala. 1981)). When a party asserts a fraud claim, the party must "state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Specifically, the party must allege "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the [party]; and (4) what the defendants gained by the alleged fraud." *Am. Dental Ass'n. v. Cigna Corp.*, 605 F. 3d 1283, 1291 (11th Cir. 2010) (quoting *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F. 3d 1364, 1380-81 (11th Cir. 1997)).

On the other hand, to properly state a claim for deceit, a plaintiff "must prove that the defendant willfully or recklessly misrepresented or suppressed material facts with the intent to mislead. *Huntsville Golf Dev., Inc. v. Est. of Brindley*, No. 5:13-CV-00870-MHH, 2015 WL 5693608, at *9 (N.D. Ala. Sept. 29, 2015) (citing *Hughes v. Hertz Corp.*, 670 So. 2d 882, 888 (Ala. 1995)).

In the instant case, Defendants' allegations to support their fraud and deceit claims are insufficient. Specifically, Defendants allege that "Nutrien engaged in deceptive and fraudulent conduct by, among other things, using incomplete, inaccurate, or misleading records or billing practices to confound the records and induce Defendants to pay fees or penalties they did not owe." (Doc. 16, p. 13). Additionally, Defendants allege that they "relied on Nutrien's misrepresentations to

their detriment," Nutrien engaged in "wanton and reckless" conduct, and Nutrien displayed an "utter disregard" for their rights. *Id.*

Although Defendants have alleged various statements made by Nutrien employees, they failed to identify precisely what statements were made or the content of those statements, the time and place of each misrepresentation, and how the alleged statements misled or caused them to act to their detriment.

For example, Defendants allege, among other statements, that Nutrien employee Wendy Glass "promised that late payments would not be reflected in any reports made to credit reporting agencies," (Amended Counterclaim, Doc. 37 ¶ 130), and misrepresented that she would "waive the interest once payment had been made to the account *after* the promissory notes and security agreements were signed." (*Id.* ¶ 170). Additionally, Defendants allege that Nutrien employee Jonathan Bailey represented that "he would credit" certain amounts back to the Fillingim Farms account (*Id.* ¶ 119), certain "terms of promissory notes would not be enforced," and promised to "refund purchases that were not actually refunded or credited against Fillingim Farms' account." However, Defendants' do not identify a time or place when the statement(s) were made or how they were relief upon.

In addition, Defendants did not allege *any* specific statements, documents, or misrepresentations made by Nutrien upon which they *reasonably* relied and, instead, attempt to meet their burden under Federal Rule of Civil Procedure 9(b)'s heightened

pleading requirement by reciting the law and using labels and buzzwords to state a plausible claim. This is insufficient to state a plausible claim for Defendants' fraud, deceit, and fraudulent inducement claims. *See Wilding v. DNC Servs. Corp.*, 941 F.3d 1116,1128 (11th Cir. 2019) ("A bare allegation of reliance on alleged misrepresentations, bereft of any additional detail, will not suffice under Rule 9(b).").

Thus, Defendants' fraud, deceit, and fraudulent inducement claims are due to be dismissed.

**B. Defendants Have Failed to Allege the Time, Place, and Person Responsible for Each Alleged Statement upon which Defendants Could Have Relied Was Made.**

As mentioned previously, any claim alleging fraud or mistake must be stated with particularity. *See* FED. R. CIV. P. 9(b). When a party alleges a fraudulent inducement claim, the party must show "one party's misrepresent[ation] [of] a material fact *concerning the subject matter of the underlying transaction* and the other party's relying on the misrepresentation to [their] detriment in executing a document or taking a course of action." *Cajun Steamer Ventures, LLC v. Thompson*, 402 F. Supp. 3d 1328, 1343 (N.D. Ala. 2019) (alteration in original) (quoting *Oakwood Mobile Homes, Inc. v. Barger*, 773 So. 2d 454, 459 (Ala. 2000)).

In the instant case, Defendants allege that Nutrien "coerced and fraudulently induced [them] into signing promissory notes and security agreements for amounts

not actually owed by any Defendant by intentionally making promises that negated the confines of the agreements" and Nutrien knew the alleged promises were false. (Amended Counterclaim, Doc. 37 ¶ 149). Even accepting this allegation as true, which Nutrien contends it is not, Defendants have failed to allege *when* these alleged misrepresentations, omissions, and/or promises upon which they relied were made. prior to executing the promissory notes and security agreements. As such, Defendants have failed to plausibly allege a fraudulent inducement claim and it is due to be dismissed. *See Am. Dental Ass'n.*, 605 F. 3d at 1291 (quoting *Brook*, 116 at 1380-81 (holding that a party must allege the "time, place, and person responsible for the [alleged] statement[s]" when asserting a fraud claim).

**C.    Defendants Could Not Have Reasonably Relied on Alleged Promises of Nutrien if they were in Direct Contradiction to the Written Terms of the Promissory Notes and Security Agreements.**

The reasonable-reliance standard imposes on [Defendants] a "'general duty . . . to read the documents received in connection with a particular transaction' . . . together with a duty to inquire and investigate." *AmerUs Life Ins. Co. v. Smith*, 5 So. 3d 1200, 1208 (Ala. 2008) (quoting *Foremost Ins. Co. v. Parham*, 693 So. 2d 409, 421 (Ala. 1997)). In fact, despite their contentions, Defendants cannot blindly rely on alleged assertions or representations and fail to review the written terms of a contract associated with a transaction. *Wells Fargo Bank, N.A. v. Trotman*, 940 F. Supp. 2d 1359, 1366 (M.D. Ala. 2013) (quoting *Eley v. Travelers Ins. Cos., Inc.*, No.

21:09-cv-958-MEF, 2011 WL 671681, at *12 (M.D. Ala. Feb. 18, 2011)) ("The mere fact that a plaintiff is told one thing is not enough to make reliance upon it reasonable; rather, a plaintiff has a duty to read associated written documents and to investigate facts that should provoke inquiry."). *See, e.g., AmerUs Life Ins. Co.*, 5 So. 3d at 1208 ("[A] plaintiff who is capable of reading documents, but who does not read them or investigate facts that should provoke inquiry, has not reasonably relied upon a defendant's oral representations that contradict the written terms in the documents."); *Wright Therapy Equip. v. Blue Cross and Blue Shield of Ala.*, 991 So. 2d 701, 706 (Ala. 2008) ("Under [the reasonable-reliance] standard, a person cannot blindly rely on an agent's oral representations to the exclusion of written disclosures in a contract.") (quoting *Harold Allen's Mobile Home Factory Outlet, Inc. v. Early*, 776 So. 2d 777, 783–84 (Ala. 2000)).

Here, the Defendants could not have reasonably relied on any alleged promises or misrepresentations made by Nutrien. Although Nutrien expressly denies that such promises or misrepresentations were made, it is immaterial. If such promises were made *prior* to Defendants executing the Promissory Notes and/or Security Agreements, which Defendants have failed to sufficiently allege, Defendants unreasonably relied on such alleged promises as they were required to review the documents prior to executing them. In fact, the Promissory Notes executed by Defendants contain, in pertinent part, the following provision:

> **[Defendants] acknowledge[] the Principal and Interest reflected in [the] Note[s] are accurate and that [they] are responsible for repaying the indebtedness.**

(Complaint, Doc. 1-1, Ex. D, p. 3; Ex. F, p. 3).

Defendants knew of and agreed to, among others, the above referenced provision in the Promissory Notes (the "Notes"). Specifically, Defendants knew the amount of debt owed under the Notes, the consequences – such as acceleration of the amounts owed – if an Event of Default occurred, and their required payment of Nutrien's reasonable attorneys' fees and costs if Nutrien incurred them. Importantly, Defendant Kaelyn Fillingim and Alyse Fowler, Defendants' counsel of record, are both licensed attorneys within the State of Alabama and notarized the Notes at issue in this action. Given their legal experience, Defendants' failure to read the documents and/or provoke inquiry or clarification into the documents' contents makes Defendants' reliance on Glass's alleged promises *even more* unreasonable. *See Darrington v. Navy Fed. Credit Union*, No. CV 1:23-16-KD-C, 2023 WL 4697241, at *7 (S.D. Ala. June 27, 2023), *report and recommendation adopted*, No. CV 1:23-00016-KD-C, 2023 WL 4688525 (S.D. Ala. July 21, 2023) (internal citation omitted) (holding that plaintiff failed to state a claim related to the invalidity of a promissory note because "'[a] party to a contract is responsible for reading the contract' before signing it."). *See also Foremost Ins.*, 693 So. 2d at 421 (holding that reliance is unreasonable as a matter of law "where the undisputed evidence indicates

that the party or parties claiming fraud in a particular transaction were fully capable of reading and understanding their documents, but nonetheless made a deliberate decision to ignore written contract terms.").

Therefore, because Defendants have failed to plead their fraud and deceit claims with specificity, they are due to be dismissed. Additionally, because Defendants have failed to plausibly allege any particular statements on which they relied, and the fact that said reliance could not have been reasonable, Defendants' fraudulent inducement claim is also due to be dismissed.

## VI.    DEFENDANTS' CLAIM FOR NEGLIGENCE FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Defendants have asserted a general claim of negligence against Nutrien. It appears Defendants are alleging that Nutrien was negligent in failing to perform their contractual obligation. As such, this claim fails as a matter of law.

Generally, "if an individual fails to perform a contractual obligation, the wronged party can find relief through a breach of contract action, not tort law." *Bozeman v. Centricity, Inc.*, No. 5:19-CV-00487-LCB, 2019 WL 5696173, at *2. (N.D. Ala. Nov. 4, 2019). Although not identical to the contractual relationship here, federal district courts have rejected "negligent servicing" claims in the context of mortgage loan servicing. See, e.g., *Blake v. Bank of Am., N.A.*, 845 F. Supp. 2d 1206, 1210-11 (M.D. Ala. 2012) ("Alabama law does not recognize a cause of action for

negligent or wanton mortgage servicing . . . ."); *McClung v. Mortg. Elec. Registration Syst., Inc.*, No. 2:11-CV-03621-RDP, 2012 WL 1642209, at *7 (N.D. Ala. May 7, 2012) (holding that plaintiffs failed to allege a plausible tort claim when plaintiffs alleged that the "[d]efendants told them to default on their Loan for ninety days to qualify for a loan modification, made it impossible for them to speak with the same person about their loan more than once, and failed to maintain their financial information on their account."); *Webb v. Ocwen Loan Servicing, LLC*, No. CIV.A. 11-00732-KD-M, 2012 WL 5906729, at *7 (S.D. Ala. Nov. 26, 2012) ("[U]nder Alabama law a cause of action for negligent servicing of a mortgage . . . cannot be maintained where the damages are economic, i.e., lost commissions."); *Forester v. Bank of Am., N.A.*, No. CIV.A. 11-0160-CG-M, 2012 WL 3206471, at *5 (S.D. Ala. Aug. 7, 2012) ("Under Alabama law, an agent . . . [can] only incur tort liability while servicing a mortgage by causing personal injury or property damage as a result of a breach of the duty of reasonable care."). While these cases all deal with mortgage loan servicing, Nutrien believes the same result should apply in a commercial debtor/creditor relationship.

Additionally, Defendants allege that Nutrien "owed a duty to supervise and train its employees to ensure they exercised reasonable care in dealing with customers, including [the] Defendants." (Amended Complaint, Doc. 37 ¶ 152). To the extent Defendants have alleged a claim of negligent or wanton training or

supervision, it is not plausibly alleged. *See Perry v. Matrix Fin. Servs. Corp.*, No. 2:18-CV-01845-JEO, 2019 WL 1597883 (N.D. Ala. Apr. 15, 2019) (dismissing negligent and wanton claims when the plaintiff failed to plead facts sufficient to show the Defendants' "employees handled her loan, what training and supervision they received, or what notice either Defendant had of their alleged incompetency.").

Therefore, because Defendants may not maintain a negligence action due to the alleged failure to perform under a contract and, to the extent it is alleged, Defendants have failed to plead sufficient facts to support a negligent or wanton training or supervision claim, the negligence claim is due to be dismissed.

## VII. DEFENDANTS HAVE FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED UNDER THE ALABAMA DECEPTIVE TRADE PRACTICES ACT.

Defendants cannot assert a private right of action under the Alabama Deceptive Trade Practices Act ("ADTPA") because it is inapplicable to them. Additionally, even if it was, Defendants have failed to plausibly allege a claim under the ADTPA because they have only recited the language of the applicable statute and have not alleged sufficient facts that meet the pleading requirement under Rule 8(a)(2) of the Federal Rules of Civil Procedure. Because of this, Defendants' deceptive trade practices claim must be dismissed.

The Alabama Deceptive Trade Practices Act (the "ADTPA") provides a private right of action for a ***consumer*** against "[a]ny person who commits one or more of the acts or practices declared unlawful under this chapter and thereby causes monetary damage to a consumer . . . ." ALA. CODE § 8-19-10. *See also Deerman v. Fed. Home Loan Mortg. Corp.*, 955 F. Supp. 1393, 1399 (N.D. Ala. 1997) (holding that the plaintiff lacked standing to bring a claim under the ADTPA). A consumer is defined as a person "who buys goods or services for personal, family, or household use." ALA. CODE § 8-19-3(2).

In the instant case, Defendants are in the commercial business of farming crops for sale. Indeed, the Agreement contains, in pertinent part, the following provision:

> The undersigned ("Buyer") agrees to the following terms and conditions of this Credit Application – Credit Agreement ("Credit Agreement") for the credit sale of fertilizers, chemicals, seed, and related products and services for business purposes only and not for personal, family, or household purposes ("Products") by Nutrien Ag Solutions, Inc., doing business as Nutrien Financial, and its successors and assigns ("Nutrien"), to Buyer from time to time during the Term.

(Complaint, Doc. 1-1, Ex. A). Because of this, it is clear that Defendants do not meet the definition of a consumer and, therefore, lack standing to bring a private right of action under the ADTPA.

Therefore, Defendants ADTPA claim is due to be dismissed.

## VIII. DEFENDANTS' REQUESTS FOR EQUITABLE RELIEF FAIL TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

The Amended Counterclaim contains various equitable remedies styled as causes of action against Nutrien. Specifically, Defendants have asserted a "declaratory judgment" claim as well as a claim for "accounting and other relief." These claims are not viable causes of action and, therefore, fail as a matter of law. In addition, Defendants have failed to plausibly allege any facts showing the difficulty of the accounts and the inadequacy of relief at law. Considering this, Defendants' declaratory judgment and accounting and other relief claims are due to be dismissed.

### A.  A "Declaratory Judgment" and an "Accounting" Are Not Viable Causes of Action.[1]

Courts within this Circuit as well as this District have held that neither a declaratory judgment claim, nor an accounting claim are valid causes of action but are remedies instead. *See Est. of Tolliver v. Regions Bank*, No. 2:19-CV-00497-RDP, 2019 WL 2435871, at *7 (N.D. Ala. June 11, 2019) (holding that the Declaratory Judgment Act "does not supply an independent cause of action which may be asserted without mentioning the source of the law that creates the rights and legal relations the party wants the court to declare."); *Kornegay v. Beretta USA*

---

[1] Nutrien has asserted an Accounting claim (Count IX) against all Defendants. (Doc. 1, p. 16). However, Nutrien's Accounting claim is attached to its separate Replevin and Order of Entry and Possession claim against all Defendants. (*Id.*, p. 14).

*Corp.*, 614 F. Supp. 3d 1029, 1037 (N.D. Ala. 2022) ("Declaratory judgments . . . are not causes of action but, rather, are remedies tied to some other cause of action."). *See also Becker v. Davis*, 491 F. 3d 1292, 1305 (11th Cir. 2007), *abrogated on other grounds by*, *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624 (2009) ("[A]n accounting is a remedy attached to a separate independent cause of action."); *Zaki Kulaibee Establishment v. McFliker*, 771 F.3d 1301, 1310 n.21 (11th Cir. 2014) (holding that an "accounting is best understood as a *remedy* for a cause of action, not as a cause of action in its own right."; *Johnson v. Pullman, Inc.*, 845 F.2d 911, 913 (11th Cir. 1988); (holding that an accounting is not available "absent some independent cause of action."); *Mitsubishi Int'l Corp. v. Cardinal Textile Sales, Inc.*, 14 F.3d 1507, 1512 & n.8 (11th Cir. 1994) (recognizing that counts styled as seeking imposition of a constructive trust and an accounting referred to "equitable remedies" and were not "independent grounds of liability"); *Hiring Automation, LLC v. Simple Onboard, LLC*, 363 F. Supp. 3d 1337, 1342 (N.D. Ala. 2019) ("Imposing a constructive trust is an equitable remedy, not a cause of action in and of itself.")

In the instant case, even when accepting the facts alleged in the Amended Counterclaim as true, their accounting and declaratory judgment claims fail as a matter of law as they are not valid causes of action. In addition, because all other claims alleged in the Amended Counterclaim must be dismissed, Defendants' claims for accounting and other equitable relief and declaratory judgment must be

dismissed. *See Caldwell v. Compass Ent. Grp. LLC*, No. 614CV1701ORL41TBS, 2015 WL 8772909, at *11 (M.D. Fla. Dec. 15, 2015) (holding that the plaintiff had no independent cause of action under which it could maintain an accounting claim when the court granted summary judgment as to all of the plaintiff's other claims).

### B.    Defendants Have Failed to Plausibly Allege the Difficulty of the Account(s) and the Inadequacy of Relief at Law.

To the extent that Defendants' claim for an accounting and other equitable relief is considered a valid cause of action, which Nutrien's contention remains that it is not, this claim is due to be dismissed as it is not plausibly alleged.

An "[a]ccounting is an equitable remedy available: (1) when accounts are mutual, (2) when an account is 'so difficult and complicated to adjust that relief at law is inadequate,' or (3) '[when] a fiduciary relationship exists between the parties.'" *Blackwood v. OneWest Bank FSB*, No. CV 11-00680-CB-B, 2012 WL 13050574, at *3 (S.D. Ala. Apr. 2, 2012) (quoting *Witman v. Mashburn*, 238 So. 2d 709, 713 (Ala. 1970)). Accounts are considered "mutual" if both parties make debits and credits to the account. *Blackwood*, 2012 WL 13050574 at *3 (quoting *Kirksey Motors, Inc. v. Gen. Acceptance Corp.*, 161 So. 2d 475, 477 (Ala. 1964)). Importantly, if both parties do not make payments, "[it] is not a 'mutual account . . . .'" *Blackwood*, 2012 WL 13050574 at *3. Moreover, a lender/borrower relationship is not a fiduciary one. *Id.*

In the instant action, the account(s) at issue are not mutual as Defendants Troy Fillingim and Fillingim Farms, Inc. were the only parties to make payments under the subject account(s). Additionally, Defendants Troy Fillingim and Fillingim Farms have failed to allege that they held a fiduciary relationship with Nutrien, and no such plausible claim could be alleged because the relationship between Nutrien and Defendants is a debtor/creditor relationship. The only scenario affording Defendants with an adequate basis for an accounting claim is the difficulty of an account. This scenario, just as the others, fails. Defendants have alleged numerous transactions under the Agreement and have attempted to call the validity of the transactions into question. However, this is insufficient. *See Kirksey Motors, Inc. v. Gen. Acceptance Corp.*, 161 So.2d 475, 477 (Ala. 1964) ("A general averment of complication of accounts [as to render inadequate a legal remedy] is insufficient.").

Indeed, a plaintiff proceeding under this theory of unjust enrichment must allege sufficient facts to "show that the accounts are so complicated and difficult to adjust that a law court could not easily ascertain and settle the accounts." *Wooten v. Wooten*, 117 So.2d 192, 194 (Ala. 1959).

Therefore, because an accounting and a declaratory judgment are not viable causes of action and, to the extent they are, were not plausibly alleged, Defendants' declaratory judgment and accounting and other equitable relief claims are due to be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' Amended Counterclaim is due to be dismissed in its entirety.

Respectfully submitted this 17th day of December, 2025.

/s/ Patrick L. W. Sefton
Patrick L.W. Sefton (ASB-8341-N47P)
Kazia J. Hale (ASB-1232-M00F)
Attorneys for Nutrien Ag Solutions, Inc.

OF COUNSEL:
CAPELL & HOWARD, P.C.
P. O. Box 2069
Montgomery, AL 36102-2069
Telephone: (334) 241-8000
Email: pat.sefton@chlaw.com
        kazia.hale@chlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been e-filed using the CM/ECF system, which will send notification of such filing to the following counsel of record, on this 17th day of December, 2025:

Alyse Phillips Fowler
Alse Fowler Law, LLC
P.O. Box 130
Elba, AL 36323
alyse@alysefowlerlaw.com
**Counsel for Defendants**

/s/ Patrick L.W. Sefton
*Of Counsel*